ST. PAUL INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellee, v. ALBERTO S. ARMAS, Defendant-Appellant (THOMAS FREEMAN *et al.*, Defendants).

First District (2nd Division) No. 87—3017

Opinion filed August 2, 1988.—Rehearing denied September 15, 1988.

William J. Rogers and Timothy G. Nickels, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Katherine S. Dedrick, and Robert G. Black, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant Alberto S. Armas, M.D., appeals from a circuit court order: (1) granting plaintiff St. Paul Insurance Company of Illinois' motion for summary judgment; (2) denying Armas' motion for summary judgment; and (3) granting plaintiff's motion to strike Armas' affidavit filed in support of his motion for summary judgment. The issues presented are whether the circuit court ruled erroneously on the parties' cross-motions for summary judgment and the circuit court erred in granting plaintiff's motion to strike Armas' affidavit.

On January 15, 1985, plaintiff issued to Armas a physician's pro-

fessional liability "claims made" policy, No. 512 TF 1470. The policy period ended January 15, 1986, with a retroactive date of January 15, 1983. The "claims made" policy promised Armas coverage and legal defense for any claims generated by professional services performed, or which should have been performed, between January 15, 1983, and January 15, 1986, provided Armas reported the claim to the insurer as required by the policy.

On August 7, 1985, Thomas and Ernestine Freeman, individually and as the parents of Ryan Thomas Freeman (collectively, Freeman), filed a complaint in Cook County circuit court against Armas and others, alleging, *inter alia*, Armas' negligence in the diagnosis and treatment of Ernestine and Ryan Freeman in 1984, causing "permanent and debilitating" injury to Ryan Freeman. Service of the Freeman complaint on Armas was not effected until March 31, 1986, and Armas denied knowledge of the lawsuit until service upon him.

Meanwhile, in August or September 1985, Armas decided to terminate his policy with plaintiff and notified by undated letter the James H. Cunningham Insurance Agency, Inc. (Cunningham), through whom Armas purchased the policy, of his intent. Armas received three letters from Cunningham, dated September 18, October 2, and October 23, 1985, in which Cunningham advised Armas of his policy's impending termination and provided the release form by which he could effect cancellation. Each letter, moreover, reminded Armas that he could, within 30 days of the policy's cancellation, extend the period in which to report claims to plaintiff by purchasing insurance coverage in the form of a reporting endorsement. Armas did not purchase the endorsement.

On October 6, 1985, Armas executed plaintiff's form designated "Cancellation Request/Policy Release," which indicated that his professional liability policy would be cancelled as of October 1, 1985.

After being served with the Freemans' lawsuit summons, Armas wrote to the Cunningham agency on April 16, 1986, informing it of the Freeman litigation and enclosing the summons and complaint served on March 31, 1986. The letter continued, "It is my understanding that this complaint was filed during the period of coverage when I was covered by a policy of professional liability insurance through [plaintiff]."

Plaintiff acknowledged receipt of Armas' letter to Cunningham in its written reply of May 22, 1986, but stated it would not extend coverage to or provide a defense for the claim because Armas reported it after the policy's termination date of October 1, 1985.

Plaintiff filed a complaint on June 2, 1986, against Armas and

the Freemans, requesting the circuit court to determine and adjudicate the rights and liabilities of the parties with respect to the policy and enter a declaratory judgment in favor of plaintiff, seeking a finding that: (1) Armas did not procure and/or request the reporting endorsement in writing within 30 days after the policy termination date of October 1, 1985; (2) Armas did not report his claim within the period of the policy agreement; (3) plaintiff is not obligated to defend Armas or pay any judgment or settlement entered against him; and (4) plaintiff has no obligation to the Freemans.

Armas answered the complaint on September 2, 1986, admitting the terms of the policy as explained in the preceding paragraphs, but denying that he made the claim 6½ months following the policy's termination date and his policy was cancelled by execution of the release form.

On April 8, 1987, plaintiff filed a motion for summary judgment, supported by affidavits and a memorandum of law, asserting that: Armas neither ordered nor applied for a reporting endorsement prior to April 1, 1986; on or after April 1, 1986, Cunningham first received notice from Armas of the Freeman litigation and the alleged acts of negligence raised by the Freeman complaint; plaintiff knew nothing of the Freeman complaint before April 16, 1986; plaintiff has no duty to defend nor does the policy provide coverage when a claim is not reported within the time frame specified by the policy; and the court should thus rule in plaintiff's favor as a matter of law.

Armas moved on July 20, 1987, for summary judgment, submitting to the court a memorandum of law and his affidavit. Plaintiff filed a reply in support of its motion on August 10, 1987, to which Armas responded on August 18, 1987.

Plaintiff additionally moved, on August 10, 1987, to strike portions of Armas' affidavit, maintaining that the affidavit contained statements inadmissible at trial, including: (1) Armas' expectation of insurance coverage; (2) conclusory remarks concerning Cunningham's alleged status as of plaintiff; (3) hearsay; and (4) statements lacking proper foundation and authentication.

Following a hearing on August 26, 1987, the circuit court found that plaintiff bore no duty to defend or indemnify Armas in the Freeman litigation and entered an order: (1) granting plaintiff's motion for summary judgment; (2) denying Armas' motion for summary judgment; and (3) striking and dismissing Armas' affidavit. Armas appeals.

## I

■ Armas insists the court erroneously granted summary judgment in plaintiff's favor because the policy language, alone and in conjunction with the cancellation form and correspondence with Cunningham, creates an ambiguity as to when a "claim is made" under the insurance contract.

The instant insurance policy is purportedly drafted in "clear, straightforward English." It contains no definitional section, however, requiring the insured to rely on the following provisions to inform him of the coverage terms:

"When you're covered

To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect.

When is a claim made?

A claim is made on the date you first report an incident or injury to us or our agent."

On another page, the policy continues:

"WHAT TO DO IF YOU HAVE A LOSS

Someone is Injured or Something Happens Which Can Result in A Liability Claim

If there's an accident or incident covered under this policy you *** must:

Tell us or our agent what happened as soon as possible. Do this even though no claim has been made but you *** [are] aware of having done something that may later result in a claim."

The above-quoted sections suggest that a claim must be made when the insured suffers a "loss." "Loss" is nowhere defined in the policy, which leaves the policyholder to decide whether "loss" means an actual finding of liability resulting in the entry of a judgment against him or means merely the filing of a complaint against him. If "loss" encompasses the latter scenario, must the insured be served with summons and complaint to trigger his obligation to "make a claim" to plaintiff for coverage? The policy itself implies "loss" could additionally mean "an accident or incident" covered under the policy. "Loss" also may mean when "someone is injured or something happens which can result in a liability claim."

Definitions of "loss" contained in case law and insurance treatises include: "[d]eath, injury, destruction or damage, in such a manner as to charge the insurer with a liability under the terms of the

policy" (*American Republic Life Insurance Co. v. Cummings* (1951), 218 Ark. 888, 890, 239 S.W.2d 10, 12), and "injury or damage for which the insurer, under the provisions of the policy, may be liable, although at the time the extent of the loss may not be ascertainable" (13A G. Couch, Couch Cyclopedia of Insurance Law §49:62, at 291 (2d ed. rev. 1982)); the definition ultimately depends on the type of insurance at issue (see *American Republic Life Insurance Co. v. Cummings*, 218 Ark. at 890, 239 S.W.2d at 11-12; 1 G. Couch, Couch Cyclopedia of Insurance Law §1:91, at 254 (2d ed. rev. 1982); 13A G. Couch, Couch Cyclopedia of Insurance Law §§49:62, 49:216, at 291, 414 (2d ed. rev. 1982)).

Further, the cancellation form signed by Armas on October 6, 1985, merely compounds the questions raised by the policy terms. The cancellation form reads, in pertinent part:

"No claims of any type will be made against the Insurance Company under this policy *for losses which occur after the date of cancellation shown above.*" (Emphasis added.)

Armas urges the clear implication of this statement to be that while claims pertaining to occurrences after October 1, 1985, may not be made to plaintiff, claims arising against the doctor prior to the policy's cancellation date may be so reported, even after the termination date passes. This inference is particularly strong in light of the drafter's use of the words "claims *** made," recalling the act necessary to trigger coverage under the policy. This construction of the cancellation form assumes "loss" means the filing of a formal complaint against the insured. The possible interpretations of the word "loss" previously described, however, demonstrate it could also mean anything from a ruling of liability by a court to a telephone call from a dissatisfied patient now threatening suit. Clearly, an ambiguity remains concerning when the insured must assume the burden of reporting a claim to the insurer.

■ Plaintiff maintains that reference to matters extrinsic to the contract is improper and that this court should limit its interpretation to the policy's four corners (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879); however, where an insurance contract consists of a policy and other documents executed as part of one transaction and accompanying the policy or incorporated therein by reference, they must be construed together in order to determine the meaning and effect of the insurance contract. *J. M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 626, 357 N.E.2d 125; *Hoffman v. Central Surety & Insurance Corp.* (1938), 297 Ill. App. 371, 374,

17 N.E.2d 619; *Handal v. American Farmers Mutual Casualty Co.* (1977), 79 Wis. 2d 67, 77, 255 N.W.2d 903, 907; see also *Straus v. Allstate Insurance Co.* (1978), 62 Ill. App. 3d 289, 293.

 In the case *sub judice*, the cancellation form and Armas' policy were not executed concurrently; nevertheless, the form identified on its face Armas' policy number, thereby incorporating the form by reference into the policy. See *J. M. Corbett Co. v. Insurance Co. of North America*, 43 Ill. App. 3d at 626; *Handal v. American Farmers Mutual Casualty Co.*, 79 Wis. 2d at 77, 255 N.W.2d at 907.

 Armas complains further that the language in the section "When is a claim made?" also creates an ambiguity when compared with policy language, appearing on the next page, explaining the optional reporting endorsement available to policyholders:

> "Optional reporting endorsement
>
> Your professional coverage may end because one of us chooses to cancel or not renew it. If this happens, you have the right to buy an optional extension of coverage. It's called a reporting endorsement.
>
> This reporting endorsement will cover:
>
> * * *
>
> Claims that are first *made or reported to us* after the ending date of this agreement and before the reporting endorsement ends." (Emphasis added.)

The emphasized terms, Armas insists, imply that a claim may be made at some point *other* than when reported to plaintiff, thereby conflicting with the prior provision stating that a claim is made *only* when communicated to the insurer.

Plaintiff mistakenly responds that the optional reporting endorsement pertains to insurance coverage distinct from the policy and therefore the paragraphs describing the endorsement cannot be construed in conjunction with the conditions of Armas' policy. Contract terms must be read contiguously to give effect to the policy in its entirety. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5.) The optional reporting endorsement provides extended coverage to an existing policy holder, not a completely new policy; it is proper to construe the two provisions together. The mere fact, furthermore, that courts previously have upheld reporting requirements in claims made policies lends little strength to plaintiff's position since the ambiguity of those provisions was not at issue in those cases. See *Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 409 N.E.2d 387; *St. Paul Fire & Marine Insur-*

*ance Co. v. House* (1987), 73 Md. App. 118, 533 A.2d 301, *cert. granted* (1988), 537 A.2d 278.

Similarly, plaintiff's contention that the "or" in "made or reported to us" is used in the conjunctive lacks merit. Applying the plain and ordinary meaning of the word, a reasonable interpretation of the phrase is that two events, not one, trigger plaintiff's obligation under the policy. *Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 371.

The confusion and apparent conflict engendered by these provisions concerning when a claim must be made give rise to ambiguities which cannot be resolved in summary judgment proceedings (*Reliance Insurance Co. v. Martin* (1984), 126 Ill. App. 3d 94, 98, 467 N.E.2d 287), and if anything, are more amenable to resolution in Armas' favor. (See *Hartford Accident & Indemnity Co. v. Neff* (N.D. Ill. 1984), 594 F. Supp. 317, 320; *Dobosz v. State Farm Fire & Casualty Co.* (1983), 120 Ill. App. 3d 674, 679, 458 N.E.2d 611.) Nor can it be concluded that the ambiguities must be resolved in Armas' favor in the absence of a clearer depiction in the record of the intent of the contracting parties and supporting factual material. (*Inland Construction Co. v. Home Indemnity Co.* (1983), 113 Ill. App. 3d 558, 559, 447 N.E.2d 1023, *appeal denied* (1983), 96 Ill. 2d 539; *La Salle National Insurance Co. v. Executive Auto Leasing Co.* (1970), 121 Ill. App. 2d 430, 437-38, 257 N.E.2d 508, *appeal denied* (1970), 44 Ill. 2d 584.) The effort to draft the policy in "clear, straightforward English," although a laudable and worthy objective, has resulted in a somewhat abstruse and complex undertaking.

Under the foregoing considerations, entry of summary judgment for plaintiff under this state of the record was error and must be reversed and remanded for further consideration.

II

■ Armas asserts that Cunningham's letters of September 18, October 2 and October 23, 1985, explaining the availability of the optional reporting endorsement and the coverage provided by the endorsement, create an ambiguity deserving of summary judgment in Armas' favor.

The presence or absence of the alleged ambiguity requires a showing by Armas that the documents should be considered part of the insurance contract. Citing *Dobosz v. State Farm Fire & Casualty Co.*, 120 Ill. App. 3d 674, Armas contends that he relied on representations made in the letters, thereby incorporating the letters into the policy. In *Dobosz*, plaintiff's homeowner's policy explicitly

excluded water damage from coverage under the policy, yet a brochure issued by the insurer intimated that water-related damage was included in the contract terms. This conflict gave rise to an ambiguity resulting in a ruling for plaintiff. The *Dobosz* court expressly rested its decision, however, on the fact plaintiff relied on the brochure in deciding to purchase the policy. (*Dobosz v. State Farm Fire & Casualty Co.*, 120 Ill. App. 3d at 679.) The element of inducement appears absent from the record in the case at bar. Moreover, even were we to assume that reliance on the letters justified incorporating them into the insurance contract, the reasonableness of that reliance is a question of fact.

The circuit court did not err in denying summary judgment for Armas.

### III

■ Armas next claims error in the striking of his affidavit by the circuit court. In light of our disposition of the preceding issues, we decline to rule on this question; however, the circuit court should consider, on remand, that the presence of some conclusory statements in an affidavit does not necessitate striking the whole document. The court should instead remove only those sentences, phrases or clauses which violate Illinois Supreme Court Rule 191 (107 Ill. 2d R. 191) and leave the remaining portions intact. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 462-63, 430 N.E.2d 1079; *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 227, 224 N.E.2d 649.

For the foregoing reasons, the circuit court's order is reversed in part, affirmed in part and the cause remanded for further proceedings consistent with this opinion.

Reversed in part, affirmed in part, and remanded for further proceedings.

BILANDIC and SCARIANO, JJ., concur.