568 N.E.2d 9 (1990)
209 Ill. App.3d 144
154 Ill.Dec. 9
INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Plaintiff-Appellee,
v.
PIONEER LIFE INSURANCE COMPANY OF ILLINOIS, Defendant-Appellant.
No. 1-88-3617.
Appellate Court of Illinois, First District, Fourth Division.
November 29, 1990.
Rehearing Denied March 26, 1991.
Francis J. Higgins and J. William Hayton, Bell, Boyd & Lloyd, Chicago, for defendant-appellant.
Edward F. Ruberry, Jeffrey A. Goldwater, Carlos Del Carpio, Timothy I. McArdle (Brinton, Bollinger & Ruberry, of counsel), Chicago, for plaintiff-appellee.
Presiding Justice McMORROW delivered the opinion of the court:
Plaintiff, International Surplus Lines Insurance Company (ISLIC), brought this action *10 against defendant, Pioneer Life Insurance Company of Illinois (Pioneer), seeking a declaration that it was not liable to Pioneer (its insured) for punitive damages paid by Pioneer in the settlement of a lawsuit brought against Pioneer in Arizona entitled Jimenez v. Pioneer Life Insurance Company of Illinois (Jimenez). Pioneer appeals from the judgment for ISLIC. Pioneer also appeals the denial of its petition for fees paid to its Arizona attorneys. ISLIC cross-appeals from that portion of order awarding Pioneer recovery of punitive damages based on vicarious liability and the costs and attorney fees for Pioneer's Illinois counsel.
The facts are largely undisputed. ISLIC and Pioneer are both Illinois corporations. In June 1980, ISLIC issued a three-year general liability insurance policy to Pioneer. The master policy expressly excluded coverage for punitive damages. However, a separate endorsement entitled "PUNITIVE DAMAGES EXTENSION" provided,
"In consideration of the premium charged hereunder, it is understood and agreed that the term `loss' shall include punitive damages, but only where permitted by law."
The Jimenez suit, filed against Pioneer in Arizona in March 1983, resulted from Pioneer's denial of a claim under a health insurance policy issued to Mr. and Mrs. Jimenez through Pioneer's agent, Lifeco Brokerage Corp., an Arizona corporation. The complaint alleged bad faith denial by Pioneer of a medical claim, misrepresentation of coverage, consumer fraud and breach of contract. The plaintiffs sought both compensatory and punitive damages. ISLIC was notified of the claim on March 18, 1983.
In May 1985, Pioneer received and transmitted to ISLIC a $450,000 settlement offer from the plaintiffs. ISLIC did not participate in the negotiations. Rather, on August 8, 1985, ISLIC filed this declaratory judgment action in the circuit court of Cook County, seeking an adjudication that it was not liable to reimburse Pioneer for any punitive damages. On August 27, 1985, following negotiations with the Jimenez's attorneys, in which ISLIC did not participate, a settlement agreement was reached in the original suit. The total settlement was $350,000, of which $40,000 represented compensatory damages, $40,000 represented punitive damages for Pioneer's direct liability, and $270,000 represented punitive damages for Pioneer's vicarious liability for the acts of its agent.
On November 7, 1985, ISLIC filed a motion for judgment on the pleadings on the ground that Illinois law applied to this action, and that Illinois case law and public policy prohibited insuring against liability for punitive damages. Following a hearing, the trial court ruled that Illinois law, rather than Arizona law, governed the dispute between ISLIC and Pioneer, that in Illinois punitive damages based on vicarious liability are insurable, but that punitive damages for direct liability are not recoverable. The judge set the matter for trial to determine whether the allocation in the settlement agreement of $40,000 to direct liability and $270,000 to vicarious liability for punitive damages was proper.
The case was subsequently transferred to another judge. Following a trial, that judge ruled that of the total $310,000 attributed to punitive damages, Pioneer was directly liable for $270,000 (87%) and vicariously liable for $40,000 (13%), thereby reversing the allocation provided for in the settlement agreement. The court therefore ruled that ISLIC was liable to Pioneer only for the $40,000 which the court had determined was attributable to Pioneer's vicarious liability. The court also denied Pioneer's petition for attorney fees for counsel in Arizona but granted the petition for costs and attorney fees paid to Pioneer's Illinois attorney. This appeal and cross-appeal followed.

OPINION
Pioneer contends that the trial court erred in ruling that Illinois law governed this action, and in holding against Pioneer on the ground that public policy of this State limits the insurability of punitive damages to those based on vicarious liability. Pioneer maintains that by the express *11 terms of the policy, Arizona law, under which punitive damages are insurable (Price v. Hartford Accident & Indemnity Co. (1972) 108 Ariz. 485, 502 P.2d 522), applies in this case.
Contracts of insurance are subject to the same rules of construction as are applicable to other types of contracts. When construing an insurance contract, the primary objective is to give effect to the intent of the parties as expressed by the terms of the agreement. (International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co. (1988), 168 Ill. App.3d 361, 370, 119 Ill.Dec. 96, 522 N.E.2d 758.) If the language is ambiguous, it is to be construed in favor of the insured and against the insurer, as the drafter of the document; however, if the language of the policy is clear and unambiguous, it will be applied as written. (U.S. Fire Insurance Co. v. Schnackenberg (1981), 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203; International Minerals & Chemical Corp., 168 Ill. App.3d at 371, 119 Ill.Dec. 96, 522 N.E.2d 758.) When interpreting an insurance contract, the court should neither distort the meaning of words so as to reach a desired result, nor search for or invent ambiguities where none exists. Rather, the court should examine the policy as a whole and interpret words according to their plain and ordinary meanings. (Western Casualty & Surety Co. v. Brochu (1985), 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872; International Minerals & Chemical Corp., 168 Ill.App.3d at 371, 119 Ill.Dec. 96, 522 N.E.2d 758.) Finally, when an insurer attempts to limit liability by excluding coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusionary language on which it relies. Strzelczyk v. State Farm Mutual Automobile Insurance Co. (1985), 138 Ill.App.3d 346, 93 Ill.Dec. 20, 485 N.E.2d 1230, aff'd (1986), 113 Ill.2d 327, 100 Ill. Dec. 808, 497 N.E.2d 1170.
The policy provision at issue in this appeal is the "Punitive Damages Extension" endorsement attached to the master policy. In the master policy, coverage for punitive damages is expressly excluded. However, the separate attachment endorsement states:
"In consideration of the premium charged hereunder, it is understood and agreed that the term `loss' shall include punitive damages, but only where permitted by law."
It is Pioneer's position that when given its plain and ordinary meaning, the word "where" in the endorsement refers to a geographic location; and that `geographic location' or `place' was the intended meaning of the phrase "where permitted by law" in the endorsement. Pioneer argues that the phrase, and indeed the punitive damages extension endorsement itself, would be rendered meaningless if the law of Illinois were to govern regardless of in which State the punitive damages were imposed or awarded. Pioneer contends that "where permitted by law" constitutes an unambiguous choice of law provision because it was intended and agreed by the parties that coverage for punitive damages would be determined under the law of the State in which the claim for the award of punitive damages arose.
ISLIC's response to this critical issue is that the words "only where permitted by law" do not act as a choice of law provision. Both ISLIC and Pioneer maintain that the phrase is not ambiguous. Citing Webster's Ninth New Collegiate Dictionary, ISLIC asserts that "`where' means and is synonymous with `at, in or to what situation, position, direction, circumstances or respect.'" It is ISLIC's position that "[t]his phrase plainly acts to alert the insured that punitive damages fall within the definition of loss only under those circumstances where the law permits; and that in Illinois, punitive damages arising from the insured's direct misconduct are not insurable in Illinois." We disagree.
Words in contracts are to be given their plain and ordinary meanings. (International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co. (1988), 168 Ill. App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758.) In our opinion, "where" is most commonly understood as referring to a place or location. Our opinion is supported by Webster's *12 Third New International Dictionary (Merriam-Webster, Inc. 1987, at 1342) as well as Black's Law Dictionary ((5th ed.) 1971, at 1768). Whether used as an adverb or noun, its primary definition is "at or in what place," "to the place at" and "the place in which something mentioned is or occurs." "If" and "in the event of" appear as only secondary definitions.
Words are also to be read in their factual context and in the context of the policy as a whole. (International Minerals & Chemical Corp., 168 Ill.App.3d, at 371, 119 Ill. Dec. 96, 522 N.E.2d 758.) Here, the disputed phrase is not contained in the "Exclusions" section of the master policy wherein punitive damages are expressly excluded. Rather, the phrase appears in a separate endorsement, extending coverage to punitive damage claims. It is significant that an additional, higher premium was charged for this supplemental coverage. Had ISLIC intended to limit coverage of punitive damages to those based on vicarious liability, it could have stated, e.g., "to the extent permitted by Illinois law" or "only in situations in which the punitive damage liability is vicarious."
ISLIC markets its policy nationwide. Absent an express choice of Illinois law, we determine that the phrase "only where permitted by law" in the context of the separate endorsement agreed to by the parties, is not reasonably interpreted as limited to application of the law of Illinois.
Further, we note that in section XI of the policy entitled, "Service of Suit" ISLIC states:
"[i]n the event of the failure of the Company to pay and [sic] amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America, and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." (Emphasis supplied.)
It is clear from this section that ISLIC anticipated suits in courts of States other than Illinois, and that ISLIC agreed that all matters relative to disputes concerning the policy were to be interpreted within the law and practice of the courts of those States. Thus, in our judgment, the phrase "where permitted by law" unambiguously refers to the State in which the risk is located and the claim for punitive damages arises.
When an insurer attempts to limit coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusionary language on which it relies. The law presumes that the insured intended to obtain coverage and that the insurer would have stated all exclusions clearly and specifically. (Strzelczyk v. State Farm Mutual Automobile Insurance Co. (1985), 138 Ill.App.3d 346, 93 Ill. Dec. 20, 485 N.E.2d 1230, aff'd (1986), 113 Ill.2d 327, 100 Ill.Dec. 808, 497 N.E.2d 1170.) Here, Pioneer paid an additional premium to obtain supplemental insurance coverage for liability for punitive damages. Had ISLIC intended that punitive damages were insurable only to the extent allowed by Illinois law, it could have inserted that express limitation in the endorsement. Having failed to do so, ISLIC cannot now request this court to nevertheless impose such a limitation from the policy as written.
In summary, we find that giving the words in the endorsement their plain and ordinary meaning, and reading them in the factual context of the special endorsement and in the context of the policy as a whole, including the "Service of Suit" section, the phrase "where permitted by law" is not ambiguous, and refers to the jurisdiction in which the claim for punitive damages arose.
However, even assuming arguendo that the phrase could be considered ambiguous, generally ambiguities will be construed in favor of the insured and against the insurer as drafter of the insurance contract. (U.S. Fire Insurance Co. v. Schnackenberg (1981), 88 Ill.2d 1, 57 Ill. Dec. 840, 429 N.E.2d 1203.) Additionally, extrinsic evidence may be introduced to assist the court in determining what meaning was intended. St. Paul Insurance Co. *13 v. Armas (1988), 173 Ill.App.3d 669, 123 Ill.Dec. 283, 527 N.E.2d 921.
In this case, Pioneer sought but was not allowed to introduce into evidence two documents to support its construction of the language at issue. The first is a letter from ISLIC's agent regarding the availability and desirability of supplemental coverage for punitive damages. In the letter ISLIC noted that,
"[p]unitive damage awards in excess of $1 million against insurance companies have increased steadily during the past years. These judgments have derived from policyholders' suits alleging misconduct, bad faith claim settlements and oppression."
The letter advised Pioneer that this supplemental insurance,
"provides coverage for `extra-contractual' losses such as punitive damages and as excess limit judgments where permitted by law. The policy affords coverage for any claim arising out of any act, error, omission, committed or alleged to have been committed during the course of professional services * * *.
Many of these exposures are not covered under the standard * * * policy, and because of our desire to provide our insured the most complete protection we can, we are now offering this form of coverage." (Emphasis supplied.)
The second document was a letter from ISLIC regarding a claim for punitive damages brought against Pioneer in Oklahoma. It read, in pertinent part:
"[e]ndorsement # 2 [the punitive damages endorsement] to the policy affords coverage for an award of punitive damages where same is permitted by law. In this regard, I note that the Oklahoma Courts have not really addressed the recoverability of punitive damages under an insurance contract. Hence, we must initially accept this matter under a Reservation of Rights as respects [the numbered policy]."
Although we determine the policy language is unambiguous, we believe that the interpretation now urged by ISLIC is negated by these documents. Both documents are evidence that ISLIC did not intend, as it now asserts, that Illinois law was to be controlling in all cases seeking punitive damages from Pioneer.
It is ISLIC's contention however that in addition to the interpretation it places on the language of the policy, Illinois law must be applied in this case. ISLIC argues at length that even assuming the endorsement constituted a choice of law provision, it cannot be applied for two reasons. ISLIC first asserts that under the "most significant contacts" test discussed and applied in Ingersoll v. Klein (1970), 46 Ill.2d 42, 262 N.E.2d 593 and Purcell & Wardrope v. Hertz Corp. (1988), 175 Ill. App.3d 1069, 125 Ill.Dec. 585, 530 N.E.2d 994, Illinois law should be applied. ISLIC further asserts that, in any event, Arizona law conflicts with Illinois public policy on the insurability of punitive damages, and Illinois public policy on this issue cannot be overridden by the laws of a foreign jurisdiction.
The "most significant contacts" test derives from section 188 of the Restatement (Second) of Conflict of Laws (1971) (the Restatement), which is entitled "Law Governing in Absence of Effective Choice by the Parties." The factors to be considered in determining the applicable law under section 188 include the place(s) of negotiation, execution and performance of the contract, the location of the subject matter and the domiciles or places where the parties are incorporated or do business. ISLIC argues that applying this test, Illinois has the most significant contacts with the parties because the contract was negotiated and executed in Illinois, where both it and Pioneer are incorporated. ISLIC also argues that, although the claimant was an Arizona resident, the acts giving rise to Pioneer's liability for punitive damages, i.e., the bad-faith denial of the claim and rescission of the Jimenez policy, were decisions made at Pioneer's corporate headquarters in Illinois. ISLIC also states that performance of the contract by its making payment to Pioneer would occur in Illinois.
It is true that Illinois courts have adopted the Restatement in resolving conflict *14 of law situations. (Nelson v. Hix (1988), 122 Ill.2d 343, 119 Ill.Dec. 355, 522 N.E.2d 1214; Wartell v. Formusa (1966) 34 Ill.2d 57, 213 N.E.2d 544; Donaldson v. Fluor Engineers, Inc. (1988), 169 Ill. App.3d 759, 120 Ill.Dec. 202, 523 N.E.2d 1113.) Although we agree that the factors enumerated in section 188 are among numerous relevant factors to be considered in resolving any conflict of law case, section 188 applies, by title and substance, only in the absence of an effective choice of law by the parties, which was the situation in each of the cases cited by ISLIC. When, as in the instant case, the contract contains a choice of law provision, section 187 of the Restatement applies. Section 187 provides:
"(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law." Restatement (Second) of Conflict of Laws [section] 187 (1971).
Essentially, section 187 provides that the parties' choice of law governs unless (1) the chosen State has no substantial relationship to the parties or the transaction or (2) application of the chosen law would be contrary to a fundamental public policy of a State with a materially greater interest in the issue in dispute.
We further note that section 193 of the Restatement, which deals with contracts of fire, surety or casualty insurance, provides,
"The validity of [such contracts] and the rights created thereby are determined by the local law which the parties understand was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the parties and the transaction, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws [section] 193 (1971).
In this case, we have determined that the language "where permitted by law" in the endorsement as well as the language in the "Service of Suit" provision constituted a choice by the parties that their rights and duties under the policy were to be governed by the law of the State where the disputed claim arose. Comment (a) to section 187 states that it is not necessary to specify a particular forum as long as it can be determined from the provisions that the parties wished to have the law of a particular State apply. (Restatement (Second) of Conflict of Laws, sec. 187, comment (a) at 561 (1971).) Thus, under section 187, Arizona law should govern unless, first, it is determined that Arizona has no substantial relationship to the parties or the contract.
The record reveals that Pioneer's insurance policy was issued to Jimenez by an insurance broker incorporated in Arizona, who was also named as a defendant in the Jimenez suit. Mr. and Mrs. Jimenez were Arizona residents. Thus, the insured risk was located in Arizona. The claim arose and suit for compensatory and punitive damages was filed in an Arizona court. Had a settlement not been reached between Pioneer and its insured, the tort law of Arizona would have been applied at the trial of the action. In light of these facts, it is clear that Arizona had a substantial relationship to the parties and to the contract *15 between Pioneer and ISLIC, which provided professional liability coverage for claims made against Pioneer by its insureds.
Comment (f) to section 187 notes that generally the reasonable basis test in section 187(2)(a) is satisfied if the chosen State was the State of incorporation or principal place of doing business unless that place was wholly fortuitous and bears no reasonable basis for the parties' choice. While there is no dispute that Illinois has some contacts with the parties and transaction, most Illinois contacts stem from the fortuitous fact that ISLIC and Pioneer are both Illinois corporations. ISLIC does not deny that it markets its standard insurance company professional liability policy nationwide to insurers seeking indemnification for claims made under policies that the insurers issue nationwide. Had Pioneer been incorporated in a State other than Illinois, as many of ISLIC's other insureds are, most of the contacts ISLIC points to would not be present.
We determine that the contract contained a choice of law provision and that Arizona has a substantial relationship to the parties and transaction. Thus, our remaining inquiry under section 187 of the Restatement is whether Illinois has a materially greater interest in the matter at issue than does Arizona. If Illinois has a materially greater interest in the issue and application of Arizona law would violate a fundamental public policy of Illinois, the parties' contractual choice of law will not be enforced.
ISLIC is correct that in Beaver v. Country Mutual Insurance Co. (1981), 95 Ill. App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058, the fifth district appellate court held that Illinois public policy prohibits insuring against liability for punitive damages that arise out of one's own misconduct. The Beaver court adopted the reasoning in Northwestern National Casualty Co. v. McNulty (5th Cir.1962), 307 F.2d 432, which noted that the purposes of punitive damages are to punish the wrongdoer and deter others from like behavior. The court reasoned that if a person is able to insure himself against punitive damages, he acquires the freedom of misconduct, thereby frustrating the punitive purpose. The court also believed that if a party is allowed to shift the burden to an insurer, an award of punitive damages would result in punishing the insurer, which has done no wrong, and ultimately causes the burden to rest on the public in the form of higher insurance premiums. The Beaver court emphasized that its holding did not affect the rule in Scott v. Instant Parking, Inc. (1969), 105 Ill.App.2d 133, 245 N.E.2d 124, allowing an employer to insure against vicarious liability for the wrongful conduct of an employee or agent.
The supreme court of Arizona expressly rejected the McNulty reasoning in Price v. Hartford Accident & Indemnity Co. (1972), 108 Ariz. 485, 502 P.2d 522. The Price court stated, inter alia, that allowing insurance for punitive damages does not necessarily result in the insured escaping punishment because awards of punitive damages are generally followed by an increase in the insured's subsequent premiums. It was the court's opinion that insurance against punitive damages does not defeat the intended purpose of deterrence because punitive damage awards frequently exceed the policy limits, leaving the insured exposed to additional liability. The court further reasoned that it must be presumed that an insurer which voluntarily undertakes to provide coverage for punitive damages has based its premium on its possible exposure, and that holding it liable for punitive damages would not result in additional burdens on the public. Finally, the Price court noted that Arizona has more than one public policy, and one such important policy is that an insurance company which admittedly took a premium for coverage of all liability, including punitive damages, should honor its contractual obligation. The court concluded that when a premium has been paid and accepted and the protection has been promised, public policy is best served by requiring the insurance company to pay for the protection promised.
In conflicts of law cases, Illinois courts have held that the public policy considerations must be of a strong and fundamental *16 nature to justify the rejection of the chosen law of the parties. A court should not refuse to apply the chosen law of another jurisdiction, however unlike its own, unless it is contrary to the public morals or natural justice, or unless the enforcement of it would be of evil example or harmful to its citizens. Nelson v. Hix (1988), 122 Ill.2d 343, 119 Ill.Dec. 355, 522 N.E.2d 1214; Potomac Leasing Co. v. Chuck's Pub, Inc. (1987), 156 Ill.App.3d 755, 109 Ill.Dec. 90, 509 N.E.2d 751.
In Nelson, the Illinois Supreme Court was presented with a conflict of laws question in a tort action. Arthur Nelson and his wife, Marjorie, residents of Ontario, Canada, were involved in an accident in Illinois while driving an automobile leased to them in Illinois. The Nelsons filed suit against Hix, the driver of the other car. Following settlement of Arthur's suit, his complaint against Hix was dismissed. Marjorie thereafter amended her complaint against Hix and also added Arthur as an additional defendant, alleging various acts of negligence by him. Arthur moved to dismiss the action against him on the ground that the interspousal tort immunity statute then in effect in Illinois barred the suit. Canadian law, however, permitted such actions.
The Illinois Supreme Court found that Canada had a materially greater interest in the marital relationship of its citizens and that, in contrast, Illinois had little interest in regulating the rights of married foreign citizens. The Nelson court therefore held that Canadian law applied, notwithstanding that the car was leased in Illinois and that the accident occurred in Illinois. The court also observed that the insurance policy on the leased vehicle did not specify that Illinois law was to be applied, and that because, by their inherent nature, cars are mobile, insurers are on notice that they may be driven to States which have abrogated the doctrine of interspousal tort immunity. The court further noted that even under the older doctrine of "comity," a court was not required to either recognize or refuse to recognize the law of a foreign land. Citing Wintersteen v. National Cooperage & Woodenware Co. (1935), 361 Ill. 95, 197 N.E.2d 578, the court stated that comity simply provided courts with the means to refuse to apply foreign law which was clearly contrary to the public morals, natural justice or general interest of its citizens. The Nelson court determined that application of Ontario law was not so contrary to the public morals, natural justice or general interest of Illinois citizens so as to bar the suit in this State. Similarly, in the instant case, we determine that Arizona law which may be contrary to the public policy of Illinois, expressed in Beaver, is not so contrary to public morals and natural justice, or enforcement of which would be of evil example or harmful to the people of Illinois, that application of Arizona law, permitting insurance coverage for punitive damages, should be denied.
Summarizing, in this case, as in Nelson, the policy did not specify that Illinois law was to be applied. Rather, under the provisions of the "Service of Suit" section and the express language of the separate punitive damages endorsement, claims for punitive damages would be paid where such damages are permitted by law. Insurance against liability for punitive damages is allowed in Arizona; Arizona has a significant interest in regulating the conduct of insurers which issue policies to residents of that State; and the Arizona Supreme Court has expressly stated that there is no public policy prohibiting awards of punitive damages to its citizens for misconduct by an insurer. Price v. Hartford Accident & Indemnity Co. (1972), 108 Ariz. 485, 502 P.2d 522.
Although application of Arizona law may conflict with Illinois public policy as determined in Beaver v. Country Mutual Insurance Co. (1981), 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058, we do not believe that Illinois has a materially greater interest in the issue being litigated. Application of Arizona law in this case will have virtually no effect on the citizens of Illinois, and Illinois has little interest in regulating the conduct of insurers whose contracts relate to citizens of other States. Neither do we believe that Illinois public policy is so strong or fundamental regarding *17 the insurability of punitive damages as to override the choice of law found in the language of the insurance contract. As noted, Illinois public policy does not prohibit insuring against punitive damages based on vicarious liability. Scott v. Instant Parking, Inc. (1969), 105 Ill.App.2d 133, 245 N.E.2d 124.
Finally, we are of the opinion that a stronger and more fundamental policy of Illinois is that when payment of a premium is made by an insured and accepted by the insurance company and coverage is promised in return therefor, the insurer should be required to fulfill its contractual obligations. See, e.g., Strzelczyk v. State Farm Automobile Insurance Co. (1986), 113 Ill.2d 327, 100 Ill.Dec. 808, 497 N.E.2d 1170; Kaufman v. Economy Fire & Casualty Co. (1979), 76 Ill.2d 11, 27 Ill.Dec. 742, 389 N.E.2d 1150.
Turning to the cross-appeal, ISLIC contends that the trial court erred in finding coverage for the punitive damages for which Pioneer was found to be vicariously liable. Citing Beaver v. Country Mutual Insurance Co. (1981), 95 Ill.App.3d 1122, 51 Ill.Dec. 500, 420 N.E.2d 1058 and Affiliated FM Insurance Co. v. Beatrice Foods (N.D.Ill.1985), 645 F.Supp. 298 ISLIC argues that the exception to Illinois public policy which permits recovery of punitive damages based on vicarious liability is a very limited exception which applies only when an employer is wholly innocent and the punitive damages are assessed solely on the basis of the employer's liability for the misconduct of an employee. ISLIC argues that no coverage is available if there was any complicity by the employer, direct or indirect, in the wrongful conduct of the employee. ISLIC asserts that here Pioneer was found to have directly participated in the conduct of its agent-employee for which punitive damages were awarded, including those based on vicarious liability and, therefore, is not entitled to recover any punitive damages.
ISLIC's reliance on Beaver and Affiliated FM Insurance Co. is misplaced. In Beaver, the acts giving rise to the action and the trial thereof all took place in Illinois. No issue existed as to what law or public policy applied. In Affiliated FM Insurance Co., although the underlying action was tried in Kansas, which prohibits punitive damages against a corporation on vicarious liability grounds, the parties expressly agreed in the Illinois district court that Illinois governed the issues presented. In the case at bar, however, we have determined that the applicable law is that of Arizona, which permits insuring against punitive damage awards and that Illinois does not have an interest in the issue presented that is so materially greater than Arizona's as to override the parties' choice of Arizona law. Thus, ISLIC's argument regarding Illinois public policy and the "innocent employer" rule necessarily fails.
Pioneer's appeal and ISLIC's cross-appeal each raise issues concerning attorney fees. Pioneer contends that the trial court erred in refusing to order ISLIC to reimburse the fees and costs paid to Pioneer's Arizona attorneys for defense of the Jimenez action. Pioneer disputes the trial court's finding that it did not present sufficient evidence to satisfy the standards in Illinois regarding what must be shown to establish that both the services performed and the charges for those services were reasonable.
Conversely, in its cross-appeal, ISLIC contends that the trial court erred in awarding Pioneer the fees it paid to Illinois. ISLIC argues that the policy issued to Pioneer is an indemnity policy which requires it to reimburse the insured only for defense costs the insured shows were reasonably related to the defense of a covered claim. ISLIC maintains that Pioneer did not meet its burden of allocating the defense costs it paid to its Illinois counsel for the defense of the only covered claim, that being the claim for compensatory damages.
ISLIC alternatively argues that even if we affirm that portion of the trial court's order finding that the policy also covers the punitive damages based on vicarious liability, Pioneer is entitled only to the same percentage of the fees paid to its Illinois counsel as the percentage of the $350,000 *18 settlement attributed to compensatory damages and punitive damages based on vicarious liability.
Our holdings, however, necessitate reversal of the order in this case and remandment for further proceedings pursuant to the law of Arizona. Because the issues relating to attorney fees may well be affected by those proceedings, it is neither necessary nor appropriate for us to rule on the arguments relating to the court's rulings on fees.
For the reasons stated, the order of the trial court is reversed and this cause is remanded for further proceedings consistent with our holdings.
REVERSED and REMANDED.
JOHNSON and JIGANTI, JJ., concur.