**Diane M. HENDRICKS and Hendricks Holding Company, Inc., Plaintiffs-Appellants,**

v.

**NOVAE CORPORATE UNDERWRITING, LTD., Defendant-Appellee.**

No. 16-1712

United States Court of Appeals, Seventh Circuit.

Argued September 19, 2016

Decided August 18, 2017

Steven D. Pearson, Daryl Davis I, for Plaintiff-Appellant.

Peter Francis Lovato III, John E. Black Jr., W. Joel Vander Vliet, for Defendant-Appellant.

Before POSNER, WILLIAMS, and SYKES, Circuit Judges.

SYKES, Circuit Judge.

As a general rule, choses in action are freely alienable. But courts can—and indeed must—refuse to enforce certain contractual assignments on public-policy grounds. In Texas "assignments of choses in action that tend to increase and distort litigation" violate public policy and are invalid. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 711 (Tex. 1996). The question in this case is whether that public policy prohibits enforcement of a settlement arrangement in which the defendant admitted liability, stipulated to an amount in damages, and assigned its claim against its insurer to the plaintiff; the plaintiff promised to seek the stipulated damages only from the insurer; and the insurer played no role in the settlement because it had no duty to defend. The defendant's insurer, Novae Corporate Underwriting, Ltd., contends that this settlement-and-assignment is neither enforceable nor binding against it. We agree. This type of settlement scheme is collusive and distorts the adversarial process. The assignment is invalid as a matter of Texas public policy.

## I. Background

Novae issued an insurance policy to Fairfax Financial Holdings, the parent company of Cunningham Lindsey Claims Management, Inc. The policy had a $1 million retention and covered both Fairfax and Cunningham. After the retention was exhausted, the policy covered losses resulting from any claim made for a wrongful act, including damages, judgments and costs, charges, expenses incurred, and any "reasonable and necessary legal fees and expenses incurred by the [a]ssureds in the defense or investigation of any [c]laim."

While insured by Novae, Cunningham entered into an agreement with American Patriot Insurance Agency, Inc., to provide claims-handling services for insurance products marketed to roofing contractors. Part of Cunningham's responsibilities involved setting aside appropriate monetary reserves for claims. In December 2004 American Patriot and Diane Hendricks, one of American Patriot's shareholders, sued Cunningham in Texas state court. The suit alleged that Cunningham made misrepresentations and negligently handled claims resulting in unwarranted or underpriced policy renewals. Six years later, while the Texas litigation was ongoing, American Patriot filed for bankruptcy in the Northern District of Illinois, and a trustee was appointed for the bankruptcy estate. In the meantime, Novae denied Cunningham's request for coverage. (The reasons are not important to this appeal.) Throughout the long-running Texas state-court litigation, Novae remained largely uninvolved because the policy did not obligate it to defend Cunningham in any legal action.

In 2012 Cunningham, Hendricks, and American Patriot's trustee in bankruptcy resolved the Texas litigation by entering into a Settlement Agreement, Assignment, and Covenant not to Execute. As relevant here, the agreement included (1) a stipulation to the entry of judgment in the amount of $5.12 million against Cunningham and in favor of Hendricks and American Patriot; (2) an assignment to Hendricks and American Patriot of Cunningham's purported right to recover against Novae in the coverage dispute, effective upon entry of the stipulated judgment; and (3) a covenant by Hendricks and American Patriot not to execute on the judgment against Cunningham. The settlement agreement also contained a provision stating that Illinois law would govern its interpretation. The Texas court entered judgment on May 10, 2012, in accordance with the terms of the settlement.

Hendricks and American Patriot's trustee in bankruptcy then sued Novae in the Northern District of Illinois, invoking the court's diversity jurisdiction and asserting their newly assigned rights. American Patriot later transferred its interest in the suit to Hendricks Holding Company, which was substituted into the litigation. (We will refer to Hendricks and the holding company collectively as "Hendricks" unless the context requires otherwise.)

Novae eventually moved for summary judgment on two grounds: (1) the assignment was invalid as a matter of Texas public policy and (2) the Texas state judgment was not binding on Novae under Texas law. The district court rejected the first argument but accepted the second and accordingly entered judgment for Novae, holding that the insurer owed no duty of indemnification. Hendricks appealed.

## II. Discussion

 We review a summary judgment de novo. *See Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). First up is a choice-of-law question: Does Illinois or Texas law govern the validity of the assignment? To decide this question, we apply the choice-of-law rules of the forum state—here, Illinois. *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Under Illinois law the contract's choice-of-law clause generally controls, *id.*, which in this case points to Illinois law. But there are two exceptions to this rule. The law chosen by the parties cannot create a result that is contrary to the chosen state's fundamental public policy, *id.*, and the law chosen by the parties cannot create a result that is contrary to the "fundamental policy of a state which has a materially greater interest" in the subject matter of the litigation, *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 209 Ill.App.3d 144, 154

Ill.Dec. 9, 568 N.E.2d 9, 14 (1990) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).

The first exception doesn't apply here. The parties chose Illinois law, and there's no concern that its application would violate Illinois public policy. Turning to the second exception, the *Restatement of Conflict of Laws* provides some guidance. *See Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill.2d 560, 251 Ill.Dec. 141, 739 N.E.2d 1263, 1269 (2000) ("Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions."). Whether another state has a materially greater interest in the subject matter of the litigation depends on "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971).

The parties agree that the first two factors are neutral; the record does not reflect where the settlement agreement was either negotiated or executed. The last factor, too, is neutral. Based on domicile, residence, and place of business, neither state's interest deserves greater weight. Cunningham is a Delaware corporation with a principal place of business in Texas. Diane Hendricks is a resident of Wisconsin. And American Patriot was a Wisconsin corporation headquartered in Illinois.

The only two operative factors, then, are the place of performance and the location of the subject matter of the contract. The settlement agreement contemplated multiple performances occurring in both Texas and Illinois. The agreement was effective on the date the bankruptcy court approved it; that court sits in Illinois. But the agreement called for the entry of a stipulated

judgment in the amount of $5.12 million in the state-court litigation in Texas. The agreement also required Cunningham to make a lump-sum payment in the amount of $650,000 to American Patriot's bankruptcy trustee, and the trustee was to pass on a portion of that payment to Hendricks. Both payments were to take place in Chicago. Finally, the agreement prohibited Hendricks from executing on the judgment against Cunningham, but because this performance is a form of forbearance, it cannot be assigned a geographical location.

When the place of performance encompasses more than one state, the place of the initial contemplated performance is sometimes used as a tiebreaker. *See Houlihan v. McCourt,* No. 00 C 3390, 2002 WL 1759822, at *5 (N.D. Ill. July 29, 2002). That doesn't help us here. The contract initially required performance in both Illinois and Texas. The place of performance, then, results in a draw.

■ The fourth factor—the location of the subject matter of the contract—is not up for debate and is decisive here. The agreement is centered entirely on resolving the Texas state litigation. The recitals describe the dispute pending in Texas and state that the "[p]arties desire to resolve all disputes between them by entering into this Agreement, including those disputes brought in the Cunningham Action." The subject matter of the agreement is clear and singularly focused on settling the litigation in Denton County, Texas; its validity thus implicates the public policy of that state. We conclude, as did the district judge, that Texas has a materially greater interest in the subject matter of this suit than does Illinois. Texas law controls.

The Texas Supreme Court's magisterial decision in *State Farm Fire & Casualty Co. v. Gandy* is the most comprehensive exposition of Texas policy on the assignability of choses in action. 925 S.W.2d 696 (Tex. 1996). *Gandy* begins with a history of the common-law principle, explaining that "[a]t early common law, a chose in action could not be assigned." *Id.* at 705. The early rule had several justifications, two of which were primary: the law's aversion to the multiplication of suits and the idea that rights at common law were "relational and situational—that is, determined by the identity of the particular individuals involved and their transaction or circumstances." *Id.* at 706.

The early rule eventually gave way to the demands of modern commerce and the evolution of the rights of inheritance, "which expanded to include not only property rights but rights of action." *Id.* Other common-law developments also contributed. *Gandy* traces the role of chancery courts, the growth of commerce, and the expansion of the personal right to appoint an attorney to act in litigation.[1] *Id.* at 705–07. Interested readers may look to *Gandy* for a fuller discussion of the evolution and weakening of the early common-law rule. For our purposes, the case explains current Texas policy in a way that leaves little doubt about the outcome here, so we'll skip right to the heart of the matter.

Julie Gandy sued her stepfather, Ted Pearce, for sexually abusing her when she was a child. *Id.* at 697. The abuse occurred more than 325 times over the course of two years. *Id.* at 703. During at least part of this time, Pearce was covered under a homeowner's policy issued by State Farm Fire and Casualty Company, so the insur-

---

**1.** "In the thirteenth century only the king could appoint an attorney to conduct prospective litigation," but "[o]ver time, the right to appoint an attorney for such purposes was extended to the king's subjects." *State Farm Fire & Casualty Co. v. Gandy,* 925 S.W.2d 696, 706 (Tex. 1996).

er agreed to pay an attorney to defend him but reserved the right to deny coverage based on several policy exclusions. *Id.* at 697. Without giving any notice to State Farm, Pearce settled with his stepdaughter. Under the terms of the settlement agreement, Pearce admitted liability, consented to the entry of a judgment in Gandy's favor in excess of $6 million, and assigned to her his rights against State Farm. *Id.* at 698. In exchange Gandy promised to collect the judgment from State Farm rather than from Pearce. *Id.* at 701.

The Texas Supreme Court invalidated the assignment as contrary to public policy, observing that "[t]he point of this settlement was not to end the litigation but to prolong it." *Gandy*, 925 S.W.2d at 712. In other words, the objective of the settlement was to make it possible for Gandy to recover against State Farm in subsequent litigation.

The court explained that a settlement and assignment of this nature is collusive and impermissibly distorts litigation incentives because the defendant "no longer has any incentive to oppose" the plaintiff. *Id.* at 713. It would be a different case if the parties had agreed to the settlement and assignment after an adversarial trial; in that situation "the value of [the plaintiff's] claim can be taken to be the amount of the judgment obtained." *Id.* But when an agreement of this type is made before trial, the incentives of the parties are aligned, which distorts—or at least complicates—a fair evaluation of the claim. As the court put it, it's hard enough "to try to determine what [the plaintiff] would have recovered had he gone to trial against [the defendant]; the determination is even more difficult when [the defendant's] opposing position must be reconstructed and its

merits assessed without [the defendant's] cooperation." *Id.*

Accordingly, the court held as follows:

[W]e hold that a defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim. We do not address whether an assignment is also invalid if one or more of these elements is lacking. In no event, however, is a judgment for plaintiff against defendant, rendered without a full adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.

*Id.* at 714. Hendricks hangs her hat on the second of the so-called *Gandy* factors—the insurer's tender of a defense—and tries to escape the force of the decision because this element is absent here. But it's absent for good reason: Novae had no contractual duty to defend Cunningham.

■ *Gandy* expressly declined to address whether an assignment is invalid if any of the three listed elements is missing. *Id.* When a state supreme court has not squarely addressed a question, our task is "to predict what the state's highest court would do if presented with the same issue." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994). Fortunately, two later opinions by the state's highest court provide some guidance. *See Great Am. Ins. Co. v. Hamel*, No. 14-1007, 2017 WL 2623067 (Tex. 2017); *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008).

In *ATOFINA* the court explained that when faced with an assignment similar to the one at issue in *Gandy*, a court should first evaluate whether it fits within the "formal bounds of *Gandy*." 256 S.W.3d at 673. If it does not, the court should consider whether *Gandy*'s broader rationale applies. "*Gandy*'s reason for invalidating assignments was simple: Those assignments made evaluating the merits of a plaintiff's claim difficult by prolonging disputes and distorting trial litigation motives." *Id.*; *see also Great Am.*, 2017 WL 2623067, at *5 (noting that the assignment in *Gandy* violated public policy because of "two principal defining characteristics of the overall settlement: (1) it served to prolong litigation rather than end it; and (2) it distorted the litigation").

Here the settlement-and-assignment distorted the litigation incentives of the parties in much the same way as the assignment in *Gandy*. Had Cunningham been on the hook, it would have mounted a defense with the aim of minimizing liability. But it wasn't on the hook. This "increased the complexity of the litigation" because it "unduly distorted the posture of the litigation[ ] and misaligned the parties" by placing Cunningham and Hendricks on the same side. *Gandy*, 925 S.W.2d at 715 (quoting *H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 881 (Tex. App. 1996)). It was in Hendricks's interest to seek the largest sum possible in the settlement, and it was in Cunningham's interest to agree, knowing that the burden would fall solely on Novae.

In other circumstances, a settlement and assignment of rights against an insurer may not raise the specter of collusion or pervert litigation incentives—say, when the settlement follows a fully adversarial trial, as noted in *Gandy*. *Id.* at 714. But that is not this case. This settlement arrangement distorted, complicated, and prolonged the litigation by roping in an insurer that otherwise had no obligation to be involved. Applying *Gandy*, the assignment contravenes Texas public policy and is invalid.

For completeness, we note that even if the assignment were not unenforceable, Hendricks would be blocked from using the Texas judgment as evidence of how much Novae owes. This was the basis of the district judge's decision; her reasoning on this point was sound. *Gandy*'s second holding is that a judgment agreed to between a plaintiff and defendant without a fully adversarial trial is not binding on the defendant's insurer and is inadmissible as evidence of damages "in an action against [the] defendant's insurer by [the] plaintiff as defendant's assignee." *Id.* at 714. "If an insurer's liability is to be litigated in an action by a plaintiff as a defendant's assignee after such a judgment is rendered, it should be done on the strength of [the] plaintiff's claims rather than the generosity of [the] defendant's concessions." *Id.* at 719.

Cunningham's assignment to Hendricks of its claim against Novae violates the public policy of Texas and is therefore invalid. In addition, and independently, the agreement is not binding on Novae and the Texas judgment is inadmissible against the insurer. For these reasons, the judgment of the district court is

AFFIRMED.