2016 IL App (2d) 150462
No. 2-15-0462
Opinion filed March 29, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff and Counterdefendant-Appellant, | ) ) ) | |
| v. | ) ) | No. 13-MR-307 |
| PATRICK BURKE and LISA BURKE, Individually and as Parents and Guardians of Jonathon Burke, a Minor, | ) ) ) ) | |
| Defendants | ) ) | |
| (Granite State Insurance Company, Defendant and Counterplaintiff-Appellee). | ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff and counterdefendant, State Farm Mutual Automobile Insurance Company, appeals the judgment of the circuit court of Du Page County granting summary judgment in favor of defendant and counterplaintiff, Granite State Insurance Company. At issue is the applicability of uninsured motorist coverage through a policy issued by Granite State. State Farm argues that the uninsured motorist provision in the Granite State policy is unenforceable because it violates Illinois law and public policy requiring that all motorists have uninsured

motorist coverage, notwithstanding the choice-of-law provision spelled out in the policy. Alternatively, State Farm argues that Granite State waived its policy defenses by extending coverage to defendants Patrick and Lisa Burke and their son Jonathon. Last, State Farm argues generally that it would be unjust to allow Granite State to evade the requirements of Illinois public policy embodied in the mandatory insurance laws. We agree that Granite State waived its policy defenses, and we reverse and remand.

¶ 2                                   I. BACKGROUND

¶ 3     Patrick Burke (Burke) worked as an insurance investigator for Ryan R. Robison and Company, a Michigan-based company. Burke resided in Naperville, Illinois, at all times relevant to this case. On December 17, 2010, Burke's wife, Lisa, and their sons Zack and Jonathon, were riding with him in a Chevrolet Trailblazer. The Trailblazer was a Robison company car provided to Burke for his employment, delivered to his home in Naperville, but there were no restrictions on its use by Burke. At approximately 7 p.m., the Trailblazer was involved in a motor vehicle accident with a vehicle driven by James Drascal, an uninsured driver. Burke, Lisa, and Jonathon all reported injuries resulting from the collision.

¶ 4     The Trailblazer was insured at the relevant time under the Granite State policy, issued to Robison. Burke personally insured Lisa's car, a Toyota minivan, under a State Farm policy. Both policies provided uninsured motorist coverage; however, the Granite State policy contained a Michigan uninsured motorist endorsement while the State Farm policy provided uninsured motorist coverage pursuant to the requirements of Illinois law.

¶ 5     Isabell Kendl, an insurance broker with an office in Illinois, procured the Granite State policy for Robison's company vehicles. When Burke joined Robison in 2010, the Trailblazer was added to the policy as a covered vehicle. The Granite State policy provided Robison with uninsured motorist coverage of up to $1 million for owned automobiles. In the Michigan

uninsured motorist endorsement, the policy contained several provisions relevant to our discussion.

¶ 6        Under section A, "Coverage," the policy provided:

        "We will pay those sums, and only those sums, that an 'employee' is 'legally entitled to recover' as compensatory damages because of 'bodily injury' sustained in an 'accident' with an 'uninsured motor vehicle' while such 'employee' was 'occupying' a covered 'auto' in the 'course and scope of employment' with the 'Named Insured'."

¶ 7        Section B, "Who is an Insured," of the endorsement provided:

        "The uninsured and underinsured motorists coverage of this Endorsement is provided solely and exclusively for 'employees' of the 'Named Insured', while such 'employees' are 'occupying' a covered 'auto'. Only such 'employees' are 'insureds' for uninsured and underinsured motorists coverage under this Endorsement. Neither the Company nor the 'Named Insured' intend or reasonably expect to provide such coverage to any other persons, or with respect to any 'automobiles' other than covered 'auto'."

¶ 8        Section C, "Exclusions," included:

        "Anyone other than an 'employee' in the 'course and scope of employment' with the Named Insured at the time of the 'accident' for which a claim is being made under this endorsement."

¶ 9        Section E.3 of the endorsement provided that the " 'employee' must file any suit against [Granite State] for coverage under this endorsement within three hundred sixty five (365) calendar days of the 'accident'. " The limitations period would not apply if the parties agree or if the employee has filed suit for bodily injury against the uninsured motorist within the 365-calendar-day period.

¶ 10        Section F of the endorsement included the following relevant "Additional Definitions"

pertaining specifically to the policy language used in the endorsement:

" 'Accident' means actual physical contact between an 'automobile' and a covered 'auto' that occurs during the policy period, on a 'public highway' in the State of Michigan, causing 'injury' to an 'employee' for which a 'claim' is made under this Endorsement.

'Auto' or 'Automobile' means a vehicle propelled other than by human power, having a minimum of four (4) wheels, that must be registered with a State under applicable law for use solely and exclusively on a 'public highway' to transport people or property.

\*\*\*

'Course and scope of employment' means that the 'employee has in fact applied for and received benefits under applicable Worker's Compensation law for the injuries for which a claim is being made under this Endorsement.

'Employee' means:

1. A person who is a full-time 'employee' of the 'Named Insured', who has in fact applied for and received benefits under applicable Worker's Compensation law for the injuries for which a claim is being made under this Endorsement; or

2. The personal representative of the estate of an 'employee' appointed by a court of competent jurisdiction if the 'injury' for which a 'claim' is made under this Endorsement has resulted in the death of such 'employee'."

¶ 11    Finally, section H, "Choice of Law," provided:

"This Endorsement, and the Michigan uninsured/underinsured motorists coverage provided by this Endorsement, are to be governed and interpreted in accordance with the

law of the State of Michigan, but without reference to the choice of law principles of the State of Michigan, irrespective of whether such choice of law principles are set forth by statute, regulation, common law, equity, or otherwise."

¶ 12    After the accident, Burke notified his office manager at Robison, and the insurance claim process began.  Eventually, the Burkes' claims were reported to Granite State.  Granite State turned to York Risk Services, a third-party administrator, to handle the claims.  Katherine Heyl, a senior analyst, was assigned to the claims.  Heyl did not have the authority to settle the claims or to extend uninsured motorist coverage.  Thomas Del Monte, a claims management analyst, supervised Heyl's work on the claims.  Del Monte had the authority to enter a settlement as well as to extend uninsured motorist coverage.

¶ 13    On December 9, 2011, Heyl apparently communicated to Del Monte that she believed that the Burkes' claims were within the uninsured motorist coverage offered under the Granite State policy.  Del Monte cautioned Heyl not to give Burke the impression that the claims would be covered and informed her that his initial assessment left him with concerns over whether the claims would be covered.  On December 16, 2011, after further investigation, Heyl confirmed to Del Monte that Burke had not filed a workers' compensation claim for the accident.  On January 26, 2012, Heyl sent Del Monte a report noting that Burke might not have been within the scope of his employment at the time of the accident and further noting that this presented a potential coverage issue.

¶ 14    On February 10, 2012, Del Monte informed Heyl that Granite State would "agree to provide [the] mandatory minimum" coverage pursuant to Illinois uninsured motorist requirements for the Burkes' claims.  On February 27, 2010, Heyl informed Burke in an email that Granite State would "be granting coverage" to Burke and requested copies of medical records.  Heyl also offered to investigate further regarding Lisa and Jonathon's coverage under

the Granite State policy. As a result of that investigation, Heyl drafted reports to Del Monte concluding that Lisa and Jonathon did not have coverage under the policy, because they were not on company business at the time of the accident. Heyl drafted letters denying coverage to Lisa and Jonathon. Del Monte, however, did not authorize the release of the denial letters. On June 19, 2012, Del Monte decided to provide coverage for Lisa and Jonathon, again in the minimum amount required under Illinois uninsured motorist law.

¶ 15     On July 16, 2012, Granite State extended offers of $12,000 to Burke and $200 each to Lisa and Jonathon. Burke countered, requesting a total of $85,000. Granite State countered Burke's request, and offered $20,000 to Burke and $300 each to Lisa and Jonathon. Burke again rejected Granite State's offer. Burke retained an attorney and filed an arbitration demand under the policy. In December 2012, Granite State, by letter, denied coverage for all of the Burkes' claims.

¶ 16     After Granite State refused coverage to the Burkes, Burke made a demand for arbitration pursuant to his individual State Farm policy. On February 25, 2013, State Farm filed a declaratory judgment action against Granite State and the Burkes, seeking a declaration that Granite State's policy would provide the primary uninsured motorist coverage. Granite State counterclaimed, seeking a declaration that its policy did not apply.

¶ 17     The parties conducted discovery. Eventually, Granite State filed a motion for summary judgment and State Farm filed a cross-motion for summary judgment. Granite State argued that Illinois law was inapplicable because the insurance contract specified that Michigan law would apply and was delivered to Robison in Michigan, so section 143a of the Illinois Insurance Code (215 ILCS 5/143a (West 2010)), which required a policy to be "renewed, delivered, or issued for delivery" in Illinois for its uninsured motorist provisions to apply, was on its face inapplicable to this case. Granite State then argued that the policy was inapplicable because, under the terms of

the insurance contract, the Burkes were not "employees," because when the accident occurred none of them were within the scope of employment. Granite State also raised the policy defense that Burke had not filed for arbitration within the contract's 365-day limitations period. Finally, Granite State affirmatively argued that it could raise its policy defenses notwithstanding what it described as settlement offers extended to the Burkes.

¶ 18 For its part, State Farm, relying on the fact that the Trailblazer was principally garaged in Illinois, argued that the Michigan uninsured motorist endorsement violated Illinois public policy and that the uninsured motorist provisions of the Insurance Code should be applied to reach the Granite State policy's uninsured motorist coverage. State Farm also argued that Granite State's 365-day limitations period violated section 143.1 of the Insurance Code (215 ILCS 5/143.1 (West 2010)) and that Granite State had waived its policy defenses by extending coverage to the Burkes under its policy. On March 31, 2015, the trial court granted Granite State's motion for summary judgment and denied State Farm's cross-motion for summary judgment. The trial court stated:

"There's no question that [uninsured motorist] coverage would have been available to Mr. Burke if he had been using this vehicle in the course of his employment. This is, this case comes before the Court on cross[-]motions for summary judgment, and there is no genuine issue of material fact. I think this is purely a question of law, as both counsel have delineated.

I believe State Farm's argument would be stronger if Mr. Burke were the owner of the policy. However, the owner of the policy is Ryan Robison, which is clearly located in the State of Michigan. I don't think there's anything nefarious about a Michigan corporation contracting in an insurance policy to apply Michigan law. I believe the question of delivery is not delivery to Mr. Burke. It's delivery to the owner. And

delivery is not complete until it is actually received by the owner. The fact that it first went to a broker in Illinois and then came to the owner in Michigan is not something that I believe determines where delivery took place. Delivery is obviously in Michigan when it was in the possession of the owner.

I believe that under these circumstances Mr. Burke did exactly what he should have done as the operator of the vehicle. I think Section 143a [of the Insurance Code] applies to this situation. Since he is the operator of the vehicle, he complied with his obligation under the financial responsibility portion of the statute, which imposed on him the obligation to have insurance in the State of Illinois with [uninsured motorist] coverage, and he did that by purchasing the State Farm policy. I believe that as a matter of law it is incumbent on the court to grant the motion for summary judgment of Granite State's and deny that of State Farm. That will be a final and appealable order."

¶ 19    State Farm timely appeals.

¶ 20                               II. ANALYSIS

¶ 21    On appeal, State Farm argues that the trial court erred in denying its motion for summary judgment and granting Granite State's motion for summary judgment. State Farm contends that the Granite State policy's uninsured motorist endorsement is unenforceable under Illinois law and public policy. State Farm also contends that, notwithstanding the policy language, Michigan law cannot be applied to the interpretation of the Granite State policy, so the provisions that are contrary to Illinois law cannot be enforced as written and must be interpreted in conformity with applicable Illinois statutes. In addition, State Farm contends that Granite State waived its defenses under the policy, like the limitations period and the scope-of-employment requirement, and that it should be estopped from now raising those defenses. Finally, State Farm contends

that, in general, it would be "unjust" to uphold the Granite State policy and allow it to evade Illinois's mandatory insurance laws.

¶ 22    Before addressing State Farm's arguments, we note that Granite State provides a lengthy recitation of deficiencies in State Farm's brief.  Granite State argues that State Farm's "Nature of the Action" section contains statements unsupported by citations to the record; that State Farm's statement of facts is deficient because factual assertions in the argument section of State Farm's brief are not contained in the statement of facts and relevant facts were omitted; that State Farm did not quote relevant statutory language pursuant to Illinois Supreme Court Rule 341(h)(5) (eff. Feb. 6, 2013); and that State Farm's appendix does not comply with Illinois Supreme Court Rule 342 (eff. Jan. 1, 2005).  Granite State does not request that we strike the purportedly offending sections of State Farm's brief; likewise, it has not filed a motion seeking relief with respect to the flaws it identifies.  Even if it had, we do not find the flaws identified to be so serious as to interfere with our ability to understand and adjudicate this case; to the extent necessary, we will ignore any material that is noncompliant with supreme court rules or that is unsupported in the record.  We now turn to State Farm's contentions.

¶ 23                              A. Standard of Review

¶ 24    This case comes before us after the trial court resolved the matter on the parties' cross-motions for summary judgment.  A motion for summary judgment may be granted where the pleadings, depositions, admissions, and affidavits establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2014); *WKS Crystal Lake, LLC v. LeFew*, 2015 IL App (2d) 150544, ¶ 13.  If the parties have filed cross-motions for summary judgment, the parties believe that no genuine issues of material fact are presented to the court, only issues of law.  *LeFew*, 2015 IL App (2d) 150544, ¶ 13.  As with any question of law, we review *de novo* the trial court's determination on cross-

motions for summary judgment. *Id.* Likewise, interpreting an insurance policy or a statute presents questions of law, so our review is *de novo*. *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 32. With these principles in mind, we turn to State Farm's contentions on appeal.

¶ 25                    B. Enforceability of Uninsured Motorist Endorsement

¶ 26    First, State Farm contends that the Granite State policy's uninsured motorist endorsement is unenforceable because it violates Illinois public policy. State Farm argues that Illinois public policy regarding uninsured motorist coverage as is relevant to this case is embodied in sections 143a and 143a-2 of the Insurance Code (215 ILCS 5/143a, 143a-2 (West 2010)) and in section 7-601(a) of the Illinois Vehicle Code (625 ILCS 5/7-601(a) (West 2010)).

¶ 27    Illinois's public policy is reflected in its constitution, statutes, and judicial decisions. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 400 (2010). If the terms of an insurance policy conflict with a statute, the provision will be deemed void and unenforceable. *Id.* Similarly, an insurance policy cannot be allowed to circumvent the purpose of a statute in force at the time the policy was issued. *Id.*

¶ 28    Section 143a provides, pertinently:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle that is designed for use on public highways and that is either required to be registered in this State or is principally garaged in this State shall be renewed, delivered, or issued for delivery in this State unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7-203 of the Illinois Vehicle Code [(625 ILCS 5/7-203 (West 2010))] for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of

uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."  215 ILCS 5/143a(1) (West 2010).

¶ 29   Similarly, section 143a-2 provides, pertinently:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2) of this Section." 215 ILCS 5/143a-2(1) (West 2010).

¶ 30   Finally, section 7-601 of the Vehicle Code provides, pertinently:

"No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.

The insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 7-203 of this Code [(625 ILCS 5/7-203 (West 2010))], and shall be issued in accordance with the requirements of Sections 143a and 143a-2 of the Illinois Insurance Code, as amended [(215 ILCS 5/143a, 143a-2 (West 2010))].  No insurer other than an insurer authorized to do business in this State shall issue a policy pursuant to this Section for any vehicle subject to registration under this Code."  625 ILCS 5/7-601(a) (West 2010).

¶ 31    State Farm argues that Illinois public policy conflicts with the Granite State policy as written.  According to State Farm, based on this conflict with Illinois public policy, we must invalidate the conflicting provisions in the Granite State policy and impose the requirements of Illinois law and public policy in their place.

¶ 32    In particular, State Farm argues that the Trailblazer was principally garaged in Illinois, thus bringing it within the express requirements of sections 143a and 143a-2 of the Insurance Code.  Granite State argues that State Farm's view effectively and improperly reads out of section 143a the requirement that the policy "shall be renewed, delivered, or issued for delivery in" Illinois.

¶ 33    In support of its claim that State Farm's interpretation improperly nullifies the "renewed, delivered, or issued for delivery" clause, Granite State cites *Nila v. Hartford Insurance Co. of the Midwest*, 312 Ill. App. 3d 811, 817 (2000), *Comet Casualty Co. v. Jackson*, 125 Ill. App. 3d 921, 922 (1984), and *Kerouac v. Kerouac*, 99 Ill. App. 3d 254, 257 (1981).  Based on these cases, Granite State contends that Illinois courts "have repeatedly stated that Section 143a is limited in application to policies issued or delivered in Illinois."  Granite State misreads this authority.

¶ 34    In *Nila*, this court was tasked with deciding whether the policy at issue was a new policy or a renewal policy; if it was new, then the uninsured motorist coverage would have to conform to the new policy limits, but if it was a renewal, then the uninsured motorist coverage would remain at the previous limits.  *Nila*, 312 Ill. App. 3d at 815-16.  What Granite State misreads as the holding was actually a recitation of the statutory language, aimed at providing a foundation for the discussion and resolution of the actual issue in the case.  We cannot find that *Nila* stands for a judicial pronouncement limiting the application of section 143a to policies issued or delivered in Illinois.

¶ 35    In *Jackson*, the court considered whether the defendant could claim uninsured motorist coverage after he was struck by his own insured vehicle, which was being driven away by an unknown thief. *Jackson*, 125 Ill. App. 3d at 921. Thus, the court was faced with the issue of whether the unknown thief would be deemed an uninsured motorist under the defendant's policy. *Id.* at 922. In analyzing this issue, the court cited *Barnes v. Powell*, 49 Ill. 2d 449 (1971), explaining that the supreme court "first examined section 143a of the [Insurance Code] [citation], which requires insurers to include uninsured motorist coverage in all motor vehicle liability policies issued in Illinois," and then noting that the supreme court held that " '[t]he intent of the legislature was that the uninsured motorist coverage would protect an insured generally against injuries caused by motorists who are uninsured.' " *Jackson*, 125 Ill. App. 3d at 922-23 (quoting *Barnes*, 49 Ill. 2d at 454). Once again, Granite State misreads the facts and actual holding of *Jackson* in favor of wrenching preliminary and background language from its context and creating, with the assistance of strategically placed ellipses, a purported principle that is, frankly, not present in *Jackson* and, at best, only tangentially related to *Jackson*'s actual holding.[1] *Jackson* simply does not decide the issue of whether section 143a "is limited in application to policies issued or delivered in Illinois."

¶ 36    Finally, and most egregiously, Granite State cites *Kerouac*. There, the plaintiffs had filed a declaratory judgment action against the insurance company, attempting to invoke the uninsured motorist coverage of the owner's automobile insurance policy for injuries he and one of his sons

---

[1] The *Jackson* court held that, because the defendant could not recover for his injuries under the liability portion of the insurance policy, the defendant's automobile was uninsured for purposes of the uninsured motorist coverage, and the defendant could therefore pursue a claim. *Jackson*, 125 Ill. App. 3d at 924.

sustained in an accident while the car was being driven by another son. *Kerouac*, 99 Ill. App. 3d at 256. Quoting from the factual recitation of the case, Granite State again purports to derive the holding that the application of section 143a is limited to policies issued or delivered in this state. *Id.* at 257. *Kerouac* did not involve a consideration of the applicability of section 143a; rather, it decided whether the uninsured motorist coverage of the insurance policy at issue was applicable to the facts of that case. We cannot agree, despite the fact that the quoted words exist in the case,[2] that *Kerouac* represents a judicial determination regarding the contours of section 143a.

¶ 37    We do not speculate as to Granite State's motivation in attempting to create apposite holdings from inapposite cases; it is sufficient to say that Granite State misrepresents the actual holdings of *Nila*, *Jackson*, and *Kerouac*.

¶ 38    Rejecting Granite State's authorities as irrelevant to the proper interpretation of section 143a does not resolve the question, however. State Farm contends that section 143a is applicable to the Granite State policy and serves to invalidate any conflicting provisions. Additionally, the trial court based its decision, at least in part, on the ground that the plain language of section 143a precluded its application to the Granite State policy, because the policy was not delivered in Illinois to Burke, but was delivered in Michigan to Robison. We note that our endeavor here is to review the trial court's judgment and not the trial court's reasoning, even if that reasoning is

---

[2] *Kerouac* stated that "[a]nother defense asserted by Country Mutual in the trial court was that section [143a] of the [Insurance Code] violated the Illinois constitutional ban against special legislation [citation] and the constitutional guarantee of equal protection [citation]." *Kerouac*, 99 Ill. App. 3d at 256-57. Thus, it was not the *Kerouac* court, but the *party in the case* asserting that section 143a applies to provide uninsured motorist coverage in policies issued or delivered in Illinois. *Id.* at 257.

not correct.  See *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1026 (2008) (a reviewing court conducts a *de novo* review of the trial court's grant of summary judgment, and it may affirm on any basis in the record regardless of whether the trial court relied on it or whether the trial court's reasoning was correct).  Accordingly, we first turn to the principles of statutory construction before addressing whether section 143a is applicable to the Granite State policy.

¶ 39    When we construe statutory provisions, our primary objective is to ascertain and give effect to the legislative intent.  *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 14.  The best and most reliable indicator of that intent is the language of the statute, given its plain and ordinary meaning.  *Id.*  If the statutory language is clear and unambiguous, the statute must be given effect as written, and we need not resort to further aids of statutory construction.  *Id.*  We interpret the statute in its entirety, and our interpretation should yield logical and meaningful results while avoiding an interpretation that results in absurdity or that renders specific terms and provisions meaningless or superfluous.  *In re Application of the County Collector*, 2014 IL App (2d) 140223, ¶¶ 15-16.  Finally, where different statutes touch on the same or related subject matter, we consider them together so as to render a harmonious result.  *Relf v. Shatayeva*, 2013 IL 114925, ¶ 23.

¶ 40    Similarly, when construing a contract, our primary objective is to ascertain and give effect to the intent of the parties.  *CitiMortgage Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 24.  The contractual language, given its plain and ordinary meaning, provides the best indication of the parties' intent.  *Id.*  We consider the contract as a whole, viewing each part in light of the others.  *Id.*  With these principles in mind, we return to State Farm's contentions.

¶ 41    State Farm argues that, pursuant to Illinois public policy, all vehicles regularly kept in Illinois ("principally garaged," in the statutory language) must be insured and the policy must also include uninsured motorist coverage commensurate with the liability limits.  State Farm

argues that the Granite State policy is unenforceable because its uninsured motorist endorsement does not provide the mandated coverage.

¶ 42   Section 143a states that no insurance policy for "a motor vehicle *** that is either required to be registered in this State or is principally garaged in this State shall be renewed, delivered, or issued for delivery in this State" unless it includes uninsured motorist coverage at specific minimum limits or greater.  215 ILCS 5/143a(1) (West 2010).  State Farm contends that the Trailblazer was "principally garaged in this State" and that therefore section 143a required Robison to provide uninsured motorist coverage conforming to Illinois public policy.  However, State Farm's argument omits any analysis of the phrase, "renewed, delivered, or issued for delivery in this State."

¶ 43   As noted, when interpreting a statute, we must avoid constructions that render specific language meaningless.  *County Collector*, 2014 IL App (2d) 140223, ¶ 16.  Here, the command of section 143a, that "[n]o policy *** shall be renewed, delivered, or issued for delivery in this State unless [uninsured motorist] coverage is provided therein," appears to limit the applicability of section 143a to policies that are "renewed, delivered, or issued for delivery" in Illinois.  215 ILCS 5/143a(1) (West 2010).  Under State Farm's view, section 143a applies to any vehicle principally garaged in Illinois.  However, this construction eliminates the limitation that the policy be "renewed, delivered, or issued for delivery in Illinois" and it is therefore strongly disfavored under the rules of statutory construction.  *County Collector*, 2014 IL App (2d) 140223, ¶ 16.  Moreover, the term "principally garaged" modifies "motor vehicle," which is part of the preposition delineating the sort of risks to which the insurance policy will apply.  Accordingly, we hold that section 143a applies only to policies that are "renewed, delivered, or issued for delivery" in Illinois.

¶ 44    Similarly, section 143a-2 states that no liability insurance policy "shall be renewed or delivered or issued for delivery in this State" for any motor vehicle "required to be registered in this State" unless it includes uninsured motorist coverage as specified in section 143a.  215 ILCS 5/143a-2(1) (West 2010).  This section also contains the verb phrase, "shall be renewed or delivered or issued for delivery."  However, in this section, the uninsured motorist coverage is required only for motor vehicles "required to be registered" in Illinois.  Nevertheless, because of the similarity to section 143a and the similar purposes of the two sections, we hold that they should be interpreted in the same fashion.  Thus, we hold that section 143a-2 applies only to insurance policies that are "renewed or delivered or issued for delivery" in Illinois.

¶ 45    These interpretations are borne out in at least two cases (although not, as explained above, in *Nila*, *Jackson*, or *Kerouac*).  In *Alshwaiyat v. American Service Insurance Co.*, 2013 IL App (1st) 123222, the court construed section 143a-2 in regard to whether the insurer was required to obtain another rejection of higher uninsured and underinsured motorist limits when renewing an automobile liability policy with higher liability limits.  *Id.* ¶ 30.  The court held that "[t]he statutory language of section 143a-2 clearly provides that the requirement for mandatory [uninsured motorist] and [underinsured motorist] coverage in an amount matching an insurance policy's liability limits applies *only* when policies of liability insurance are 'renewed or delivered or issued for delivery.' "  (Emphasis in original.)  *Id.* ¶ 32 (quoting 215 ILCS 5/143a-2(1) (West 2008)).  Given the similarity between the pertinent language in sections 143a-2 and 143a, we believe that the court's analysis applies equally to section 143a.  Thus, both sections apply only to policies renewed, delivered, or issued for delivery in Illinois.

¶ 46    In *Roser v. Anderson*, 222 Ill. App. 3d 1071 (1991), the court interpreted a different version of section 143a-2.  In giving effect to the provision allowing the insured to reject the higher limits of uninsured and underinsured motorist coverage upon renewing a liability policy

with increased limits, the court held that the insurer's position "would render the inclusion of the term 'renewed' in section 143a-2(1) mere surplusage and meaningless. *** The prohibition [in section 143a-2(1)] that '[n]o policy *** shall be renewed *** unless uninsured motorist coverage *** is offered ***' [citation] would be meaningless." *Id.* at 1077 (quoting Ill. Rev. Stat. 1987, ch. 73, ¶ 755a-2(1) (now codified at 215 ILCS 5/143a-2(1) (West 2010))). Our analysis of State Farm's argument mirrors that in *Roser*: by focusing solely on the motor vehicle and whether it was principally garaged in Illinois, State Farm's interpretation would render meaningless the term, "renewed, delivered, or issued for delivery." Accordingly, we hold that both *Alshwaiyat* and *Roser* directly support our analysis and conclusion, because both cases were interpreting the same provisions at issue here and used the same rationale to reach the same result that we have reached.

¶ 47    Having determined that section 143a is applicable only to policies renewed, delivered, or issued for delivery in Illinois, we turn to the undisputed facts in the record. Granite State, a foreign insurer, issued outside of Illinois an automobile liability policy to Robison. Robison was domiciled in Michigan. The policy was delivered to Robison in Michigan. Thus, for purposes of sections 143a and 143a-2, the Granite State policy was not delivered or issued for delivery in Illinois. Accordingly, the requirements set forth in those sections are not applicable to the Granite State policy, because the policy was not renewed, delivered, or issued for delivery in Illinois.

¶ 48    State Farm argues that, nevertheless, public policy in Illinois requires that all motor vehicles principally garaged in this state must have insurance policies that will provide uninsured motorist coverage at certain minimum limits for all users of those vehicles. We do not believe that public policy may be invoked to circumvent the plain and unambiguous language of a statute. Section 143a and section 143a-2 both apply to policies renewed, delivered, or issued for

delivery in this state. Thus, it would be accurate to say that Illinois public policy is invested in making sure that policyholders of policies renewed, delivered, or issued for delivery in Illinois are protected at certain minimum limits if injured by uninsured or underinsured motorists. By focusing on the motor vehicle being principally garaged in Illinois, State Farm subverts the legislative intent manifest in sections 143a and 143a-2, that the obligations therein apply only to those policies renewed, delivered, or issued for delivery in Illinois. Accordingly, we cannot accept State Farm's public-policy argument.

¶ 49 State Farm next contends that the Granite State policy is enforceable because the policy as written violates Illinois public policy. According to State Farm, public policy is violated because Burke would have been compensated had he been the at-fault driver in the accident, but, because he was not the at-fault driver and the at-fault driver was uninsured, he received no coverage under the policy, due to its requirements that he be within the course and scope of his employment with Robison at the time of the accident and that he apply for workers' compensation benefits as a result of the accident. State Farm argues that the availability of liability coverage juxtaposed against the lack of uninsured motorist coverage violates the Illinois public policy to provide broad and generous uninsured motorist coverage under sections 143a and 143a-2.

¶ 50 While we might agree with State Farm's sentiment concerning uninsured and underinsured motorist coverage, we are nevertheless constrained to ascertain and give effect to the legislative intent embodied in the statutory provisions at issue. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). We may not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express or intend. *Id.* Here, both sections 143a and 143a-2 apply to policies that are renewed, delivered, or issued for delivery in Illinois. If a policy is not renewed, delivered, or issued for delivery in Illinois, then

neither section applies to that policy, meaning that the uninsured motorist coverage requirements also would not apply to that policy. That is the situation with the Granite State policy. It was not renewed in Illinois; it was not delivered in Illinois; and it was not issued for delivery in Illinois.

¶ 51 State Farm argues that section 143a does not define the term "delivered." State Farm urges that, because this term is not defined, we may look to additional sources in determining the legislature's intent. Generally, where a term is undefined in a statute, we may look to a dictionary definition of the term. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 363 (2009). Rather than seek a dictionary definition, State Farm argues, citing *Brucker v. Mercola*, 227 Ill. 2d 502, 513-14 (2007), that we should consider the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved, keeping in mind that the legislature did not intend to produce absurd, inconvenient, or unjust results. According to State Farm, an absurd result obtains if we hold that, because the Granite State policy was "physically sent to Michigan for a vehicle that was physically [present] in Illinois," the policy somehow escapes the reach of Illinois public policy regarding the vehicle. We disagree.

¶ 52 "Deliver" or "delivery" is defined as the giving over of something to another. Black's Law Dictionary 440 (7th ed. 1999). Thus, "deliver" is defined with an eye toward the recipient. Here, Robison procured the policy at issue, and the policy was not delivered until Robison actually received it, in Michigan. Accordingly, section 143a does not apply, because the policy was not "delivered," meaning that the proper recipient did not receive the policy, in Illinois. The legislative intent is clear, obvious, and unambiguous. We cannot say that Granite State is somehow evading Illinois public policy when that public policy, as defined in section 143a, clearly does not apply to the Granite State policy.[3]

---

[3] That is not to say, however, that Robison was not attempting to evade Illinois public

¶ 53    State Farm also contends that section 7-601 of the Vehicle Code compels a different result.  In support, State Farm points specifically to the language of section 7-601 that requires any vehicle operated in Illinois to have a liability insurance policy, which must "be issued in accordance with the requirements of Sections 143a and 143a-2" of the Insurance Code.  625 ILCS 5/7-601(a) (West 2010).  However, as we have seen, both sections 143a and 143a-2 apply only to policies that are renewed, delivered, or issued for delivery in Illinois.  Thus, section 7-601 compels the result we have already reached, and it cuts squarely against State Farm's argument.

¶ 54    State Farm argues that the canons of statutory construction require that we consider sections 143a and 143a-2 of the Insurance Code and section 7-601 of the Vehicle Code not in isolation, but together, so that we can interpret them harmoniously and consistently.  Section 7-601 requires liability insurance for vehicles operated in Illinois and uninsured and underinsured motorist coverage as required pursuant to sections 143a and 143a-2.  Our interpretation, which gives effect to the clear intent of the legislature as expressed by the clear and unambiguous language of the provisions, reaches that harmonious and consistent result.  Sections 143a and 143a-2 unambiguously apply to policies renewed, delivered, or issued for delivery in this state; sections 143a and 143a-2 require uninsured and underinsured motorist coverage for those types of enumerated policies; sections 143a and 143a-2 are therefore not inconsistent with section 7-601, as it expressly references those sections and implicitly references any limitations found in

policy by procuring an insurance policy that did not conform to Illinois public policy for a motor vehicle that it intended to principally garage in Illinois.  However, that is not a question before us and we express no opinion in relation to it.

those sections. While we accept State Farm's contention about consistency, we determine that State Farm's conclusion is not supported by its argument.

¶ 55    State Farm cites *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995), for the proposition that "[s]ection 143a provides that every liability insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle." *Id.* at 152. While *Luechtefeld* did indeed make this pronouncement, it is not remotely close to the holding of the case.

¶ 56    The issue in *Luechtefeld* was whether an insurance policy may, consistently with Illinois public policy, exclude uninsured motorist coverage for a vehicle owned by the insured and covered by uninsured motorist coverage under another insurance policy. *Id.* at 149. The insured in *Luechtefeld* owned a motorcycle, which was insured under a second policy, as well as a car that was insured under an Allstate policy that specifically excluded from uninsured motorist coverage those vehicles that were insured (including uninsured motorist coverage) under a different policy. *Id*. at 149-51. The court held that public policy was not violated by the Allstate policy's exclusion of the motorcycle. *Id.* at 152-53.

¶ 57    State Farm's reliance on *Luechtefeld* is misplaced. In the first place, Burke was not the owner of the vehicle. Burke in fact owned another vehicle, and the policy for that vehicle appears to have been issued by State Farm and in conformity with Illinois law and public policy. By contrast, the car Burke was driving at the time of the accident was owned by Robison and registered in Michigan, even though it was garaged in Illinois. The Granite State policy appears to have been issued to Robison in conformity with Michigan law and public policy. The Granite State policy was a commercial auto policy that limited the uninsured motorist coverage to an employee in the scope and course of his or her employment with Robison and who filed a workers' compensation claim as a result of the accident. While this limitation might not pass

muster under Illinois public policy, Burke did not procure the insurance policy and the vehicle was not registered in Illinois. Based on these facts, we cannot say that the Granite State policy violated *Luechtefeld*. Rather, State Farm's reliance on *Luechtefeld* is misplaced, and *Luechtefeld* is factually distinct (and does not actually hold the premise for which it was cited).

¶ 58    State Farm also argues that the Granite State policy was delivered in Illinois. According to State Farm, the Granite State policy was delivered in Illinois because the broker, who was located in Illinois, received the policy before passing it along to Robison in Michigan. We disagree. Important in the definition of "delivered" is the transfer of the item to its recipient. The broker, Kendl, was not the intended recipient of the Granite State policy; rather, Robison, the insured, was the intended recipient. Accordingly, State Farm's argument applies a strained and twisted definition to the term "delivered." The dictionary may supply definitions for words not defined in a statute. *Lacey*, 232 Ill. 2d at 363. Because the focus of a "delivery" is the transfer to the recipient, and not a middleman, we reject State Farm's contention as strained, at best, and otherwise at odds with the plain and ordinarily understood definition of the term "delivered."

¶ 59                               C. Choice of Law

¶ 60    State Farm next contends that the Granite State policy's choice-of-law provision violates Illinois public policy and is unenforceable. State Farm asserts instead that Illinois law should be deemed to govern the terms of the Granite State policy, and any terms that conflict should be held to be unenforceable. Granite State counters by contending that the only public policy applicable to this case is that embodied in section 143a (and, we note, section 143a-2), which is inapplicable by its own terms, so there is no reason to invalidate the choice-of-law provision in the Granite State policy.

¶ 61    Illinois courts have adopted the Restatement (Second) of Conflict of Laws (1971) (the Restatement).  Where a contract has expressly included a choice-of-law provision, section 187 of the Restatement applies.  Under section 187, the parties' choice of law will govern unless (1) the chosen jurisdiction has no substantial relationship to the parties or the transaction, or (2) application of the chosen law would be contrary to the fundamental public policy of the jurisdiction with a materially greater interest in the disputed issue.  Restatement (Second) of Conflict of Laws § 187 (1971); *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co. of Illinois*, 209 Ill. App. 3d 144, 153 (1990).

¶ 62    Applying this rule to the facts of this case, we agree with Granite State's contention regarding the choice-of-law provision in the uninsured motorist endorsement.  We first consider whether the chosen jurisdiction has a substantial relationship to the parties.  Michigan is the chosen jurisdiction and it is substantially related to the insured, Robison, because Robison is a Michigan company domiciled in Michigan.  Granite State provides insurance in Michigan; it is not domiciled or headquartered there, but the fact that it does business in Michigan is sufficient for this analysis.  The transaction was also consummated by the delivery of the Granite State policy to Michigan; moreover, the policy itself was based on the requirements of Michigan law, as evidenced by the Michigan uninsured motorist endorsement.  Accordingly, we hold that Michigan has a sufficiently substantial relationship to the parties.

¶ 63    Second, as to whether public policy will be offended, State Farm has identified only sections 143a and 143a-2 as sources for ascertaining Illinois public policy regarding the issues in this case.  We have determined that the language of those sections renders them inapplicable. Because they are inapplicable, we cannot say that the application of Michigan law to the Granite State policy would violate Illinois public policy.  Moreover, the Granite State policy included liability insurance for the Trailblazer as well as uninsured motorist coverage, albeit not according

to the requirements of the inapplicable Illinois law. Based on this we cannot say that applying Michigan law to the Granite State policy would be contrary to Illinois public policy.

¶ 64    State Farm argues that uninsured motorist coverage is not statutorily required in Michigan (see *DeFrain v. State Farm Mutual Automobile Insurance Co.*, 817 N.W.2d 504, 509 (Mich. 2012) (providing uninsured motorist coverage in Michigan is optional and not statutorily mandated)), whereas in Illinois uninsured motorist coverage is mandatory. State Farm further argues that the no-fault insurance embodied in Michigan's no-fault act (Mich. Comp. Laws § 500.3101 *et seq.* (West 2014)) has been rejected as unconstitutional in Illinois in *Grace v. Howlett*, 51 Ill. 2d 478 (1972). State Farm concludes that the combination of optional uninsured motorist coverage and no-fault insurance is repugnant to Illinois public policy; thus the application of Michigan law in this case must be precluded. We disagree.

¶ 65    In the first place, an examination of *Grace* reveals that our supreme court did not make a blanket holding that no-fault automobile insurance was unconstitutional. Rather, as the court itself recognized, *Grace* "held unconstitutional as special legislation a section of the automobile no-fault liability statute which discriminated with regard to limits on recovery amounts between those injured by private vehicles and those injured by commercial vehicles." *In re Belmont Fire Protection District*, 111 Ill. 2d 373, 385-86 (1986) (citing *Grace*, 51 Ill. 2d at 487-88). Thus, State Farm's contention that Michigan's no-fault auto insurance law is repugnant to Illinois public policy is flatly overstated.

¶ 66    Secondarily, the fact that uninsured motorist coverage is optional in Michigan means that a policy containing such coverage is analyzed pursuant to the principles of contract interpretation. *DeFrain*, 817 N.W.2d at 509 ("[b]ecause providing [uninsured motorist] coverage is optional and not statutorily mandated under the no-fault act [in Michigan], the policy language alone controls the circumstances entitling a claimant to an award of benefits"). State

Farm does not suggest that principles of contract interpretation in Illinois are noticeably different from those in Michigan.

¶ 67    Finally, State Farm attempts to clinch its argument by invoking section 143a of the Insurance Code, claiming that the application of Michigan law, which unlike Illinois law does not mandate uninsured motorist coverage, would contravene Illinois's legislative intent. The flaw with this contention, as we have determined above, is that section 143a (as well as section 143a-2), by its terms, is inapplicable. Thus, the legislative intent behind section 143a is not offended where section 143a is not applicable to the circumstances of this case. For these reasons, we reject State Farm's contentions.

¶ 68    State Farm next argues that *International Surplus* suggests that Michigan has little relationship with the parties to this case. *International Surplus*, 209 Ill. App. 3d at 153 (the parties' choice of law should govern unless the chosen state has no substantial relationship to the parties or the transaction). In support, State Farm recites that Burke, Lisa, and Jonathon were citizens of Illinois, the Trailblazer was principally garaged in Illinois, the accident occurred in Illinois, and Burke's use of the vehicle for work and personal purposes was unrestricted. While this is true, the transaction to which *International Surplus* refers is not the accident, but the execution of the contract of insurance. Thus, State Farm's focus on the accident is analytically incorrect under *International Surplus*. *Id.* at 154 (the state of incorporation or principal place of doing business usually suffices under choice-of-law principles).

¶ 69    Moreover, the proper questions are whether Illinois had a materially greater interest in the matter than Michigan and whether the application of Michigan law would violate fundamental Illinois public policy. *Id.* It is true that Illinois was the situs of the accident and that the accident involved Illinois citizens. However, the insurance contract was procured by Robison and delivered to Robison in Michigan. The premiums were paid by Robison from Michigan, and the

vehicle was registered in Michigan. Based on this, we cannot say that Illinois's interest in this case was materially greater than Michigan's. Additionally, as we have determined above, we perceive no violation of Illinois public policy (and State Farm does not suggest that *fundamental* public policy, which it does not differentiate from simple public policy, is in danger of violation by the application of Michigan law). Accordingly, we reject State Farm's contentions.

¶ 70 State Farm argues that, under choice-of-law principles, the Granite State policy's limitations period must be voided because it conflicts with section 143.1 of the Insurance Code (215 ILCS 5/143.1 (West 2010)). The Granite State policy contains a limitations provision requiring a claimant to bring his or her claim within 365 days of the accident. Section 143.1 tolls the limitations period from the date the proof of loss is filed until the date the claim is denied in whole or in part. *Id.* State Farm argues that the limitations provision thus contravenes Illinois public policy because it conflicts with the terms of section 143.1.

¶ 71 While we agree that there is a conflict, under the choice-of-law analysis above, the existence of a conflict between a contractual provision and a statutory provision might not be enough to invalidate the parties' contractual choice of law. Regardless, we need not decide this issue, because issues regarding limitations on actions, such as statutes of limitations, are procedural, and procedural issues are governed by the law of the forum state regardless of the parties' contractual choice-of-law provisions. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351 (2002). This is because a procedural issue does not affect substantive rights. Thus, a contractual limitations provision may be overridden by the law of the forum state, because a statute of limitations only fixes the time in which a remedy for a wrong may be sought and does not alter substantive rights. *Id.* Accordingly, procedural issues remain under the aegis of Illinois law. *Id.*

¶ 72                              D. Waiver and Estoppel

¶ 73    State Farm next turns to the alternative contention that Granite State waived its policy defenses and should be estopped from raising them in this case.  Waiver is an intentional relinquishment of a known right.  *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004); *Acorn Investment Co. v. Michigan Basic Property Insurance Ass'n*, 852 N.W.2d 22, 32 (Mich. 2014).  State Farm contends that Granite State waived all of its possible policy defenses when it extended coverage under the Granite State policy to the Burkes.

¶ 74    Specifically, on February 27, 2012, Heyl wrote an email to Burke on behalf of Granite State stating, "We will be granting coverage."  Around June 19, 2012, coverage was expressly granted for Lisa and Jonathon.  The coverage was extended to the Burkes even though, as Del Monte admitted, he was aware that Burke did not claim that he was within the scope of his employment with Robison.  Granite State's investigation, conducted by Heyl, also indicated that Burke was not within the scope of his employment with Robison and that he had not, and did not intend to, make a workers' compensation claim.  Additionally, in February 2012, when Granite State informed Burke that it would be "granting coverage," the 365-calendar-day limitations period specified in the uninsured motorist endorsement would have run in December 2011 (as the accident occurred in December 2010), so Granite State made its decision to grant coverage well outside of the policy's limitations period.  Thus, despite knowing that it could invoke or reserve the policy defenses of scope of employment and the limitations period, Granite State nevertheless "grant[ed] coverage" to the Burkes.  Because waiver is an intentional relinquishment of a known right under both Michigan and Illinois law, and because, by "granting coverage" to the Burkes, Granite State relinquished known policy defenses, we hold that Granite State waived its policy defenses.

¶ 75    Granite State somewhat confusingly argues that, under Michigan law, "waiver and estoppel generally cannot be applied to 'create a liability contrary to the express provisions of the

contract the parties did not make,' " citing *Kirschner v. Process Design Associates, Inc.*, 592 N.W.2d 707, 710 (Mich. 1999) (quoting *Ruddock v. Detroit Life Ins. Co.*, 177 N.W. 242, 248 (Mich. 1920)). The problem lies not with *Kirschner*, but with Granite State's choice of a quote. *Kirschner* states, quite straightforwardly, that "[t]he application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy." *Id.* at 709-10. This, we believe, is Granite State's point: waiver cannot be used to manufacture coverage that is not available in the policy itself.

¶ 76    *Kirschner*, however, is inapposite. In that case, an insurance company had notified the defendant that it was defending under a reservation of rights. *Id.* at 708. The Michigan Supreme Court held that the insurance company was not estopped from raising policy defenses against the plaintiff, who was seeking to recover insurance proceeds from the defendant insured. *Id.* Thus, the discussion of the extent of the doctrines of waiver and estoppel in *Kirschner* arose in the context of whether estoppel particularly could be raised even though the insurance company had notified its insured that it was proceeding under a reservation of rights. *Id.* at 710. In this case, by contrast, Granite State was dealing directly with the Burkes and it did not enter a reservation of rights but actually "grant[ed] coverage" to them despite its awareness that Burke was not within the scope of his employment with Robison, Burke did not file a workers' compensation claim, and the 365-day policy limitations period had run. Thus, despite *Kirschner*'s general statements about waiver and estoppel, it is factually distinct from the circumstances of this case and cannot offer any specific guidance.

¶ 77    Additionally, to the extent that *Kirschner*'s point about not using the doctrines of waiver and estoppel to extend the coverage beyond the terms of the policy (*id.* at 710) is applicable, we offer two thoughts. First, the uninsured motorist endorsement in this case was insuring against

precisely the risk under which the Burkes (and, through them, State Farm) were claiming damages: an accident caused by an uninsured motorist. The Burkes and State Farm are not seeking to extend the coverage offered under the Granite State policy beyond its uninsured motorist protection. Second, again, waiver is an intentional relinquishment of a known right. The record amply demonstrates that Granite State was aware of its policy defenses: that Burke was not within the scope of his employment and that the policy limitations period had expired. Notwithstanding this knowledge, Granite State "grant[ed] coverage" to the Burkes under the uninsured motorist endorsement. This is a clear relinquishment of known rights, and we cannot say that State Farm illegitimately raised it to extend coverage under the policy beyond what Granite State decided when it "grant[ed] coverage" to the Burkes. Accordingly, we reject Granite State's contention that somehow *Kirschner* can successfully preclude State Farm's claim that Granite State waived its policy defenses.

¶ 78    Citing *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 534 (1996), Granite State alternatively argues that, under Illinois law, the doctrines of waiver and estoppel cannot be used to create primary liability or to increase the coverage provided under an insurance policy. We need not address this argument, because we have determined that we should evaluate the policy under the parties' choice of Michigan law. Additionally, for the same reasons the contention fails when considered under Michigan law, it also fails under Illinois law: Granite State waived its policy defenses when it "grant[ed] coverage" to the Burkes despite its knowledge that it could have invoked its policy defenses to preclude liability.

¶ 79    Granite State argues that it simply offered to settle with the Burkes and that it did not provide insurance benefits under the terms of its policy. This contention is factually rebutted by the record. The record clearly demonstrates that Granite State was "granting coverage" under the policy. Whatever internal deliberations Del Monte discussed during his deposition, the

undeniable fact remains that Granite State told Burke that it was "granting coverage" to him and, later, to Lisa and Jonathon. Moreover, the record demonstrates further that the internal deliberations were not shared with Burke. Granite State took pains not to raise Burke's hopes about coverage while it was investigating the Burkes' claims; likewise it did not communicate its belief that its policy defenses would preclude coverage. Instead, after silence regarding the issue of coverage, Granite State informed Burke that it was "granting coverage" to the Burkes under the policy. We reject Granite State's contention.

¶ 80     Granite State also argues that Heyl "had stated to the Burkes that she did not believe there was coverage under the terms of the [uninsured motorist] endorsement because Patrick Burke was not 'on company business at the time.' " In support, Granite State cites Heyl's deposition. However, the portion of the record cited clearly indicates that Heyl communicated her belief that Granite State was not liable not to Burke, but to Del Monte. In other words, Granite State's agents communicated among themselves, but not to the Burkes, that Granite State might not have had any liability under the policy. This can scarcely be characterized as Granite State somehow preserving its policy defenses by communicating its internal doubts about coverage to the Burkes. Indeed, had Granite State communicated any doubts to the Burkes, its subsequent grant of coverage would even more strongly support waiver. Nevertheless, our review of the record suggests that Granite State never communicated to the Burkes that they had no coverage under the policy; rather, the opposite is true: Granite State expressly "grant[ed] coverage" to the Burkes under the policy. Accordingly, we reject Granite State's "company-business" contention.

¶ 81     Granite State also contends that its grant of coverage was not a waiver of its policy defenses, but instead was the opening salvo of settlement negotiations. Granite State argues that State Farm is equating its settlement offers with waiver and urges that it would be contrary to sound public policy to conflate settlement overtures with waiver, because it would, in fact, serve

to discourage parties from settling their controversies. While we agree with Granite State's sentiments about the danger of conflating waiver with settlement negotiations, this does not change the undisputed facts in the record. Granite State was aware, after an apparently thorough investigation, that its liability under the policy was very likely precluded because Burke was not within the scope of his employment with Robison at the time of the accident and the Burkes' claims were not timely under the policy's limitations provision. While fully in possession of this knowledge, Granite State nevertheless informed Burke that it was "granting coverage" to the Burkes under the policy. Granite State did not inform Burke that, although it was not liable under the policy, it was willing to nevertheless settle the Burkes' claims in order to avoid further dispute. It is the grant of coverage that serves to transform Granite State's conduct unambiguously into a waiver of its policy defenses. Thus, Granite State's concern over chilling offers of settlement is legally and factually irrelevant to the issues in this case. Accordingly, we reject Granite State's contention on this point.

¶ 82                               E. Injustice to State Farm

¶ 83    State Farm last argues that it would be unjust to allow Granite State to avoid Illinois's mandatory insurance laws, and it posits the creation and exploitation of a loophole to allow a foreign insurer to write a policy for a foreign insured for a vehicle principally garaged in Illinois if this court upholds the grant of summary judgment in favor of Granite State and against State Farm. We need not address State Farm's argument, in light of our determination that Granite State waived its policy defenses.

¶ 84                               III. CONCLUSION

¶ 85    For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 86    Reversed and remanded.